300 So.2d 889 (1974)
Coleman STEWART and Maria Stewart, His Wife, D/B/a Ravenswood Mobile Home Park, Plaintiffs,
v.
Robert GREEN et al., Defendants.
No. 44832.
Supreme Court of Florida.
July 10, 1974.
Rehearing Denied October 16, 1974.
*890 Thomas F. Panza of Wolf, Gora & Courtney, Fort Lauderdale, for plaintiffs.
Alan S. Becker and Sheryl J. Lowenthal of Becker & Poliakoff, Miami Beach, for defendants.
Robert L. Shevin, Atty. Gen., and Richard Stanley Rachlin, Asst. Atty. Gen., for the State of Florida, as intervenor.
ERVIN, Justice.
We consider a certified question of law from Honorable Stephen R. Booher, Judge of the Seventeenth Judicial Circuit for Broward County, Florida.
The question certified for our consideration is as follows:
"Whether Florida Statutes 83.271, renumbered 83.69, providing that
"`(1) A mobile home park owner or operator may not evict a mobile home or a mobile home dweller other than for the following reasons:
"`(a) Nonpayment of rent.
"`(b) Conviction of a violation of some federal law, state law or local ordinance which may be deemed detrimental to the health, safety and welfare of other dwellers in the mobile home park.
"`(c) Violation of any reasonable rule or regulation established by the park owner or operator, provided the mobile home owner received written notice of the grounds upon which he is to be evicted at least thirty days prior to the date he is required to vacate. A copy of all rules and regulations shall be delivered by the park owner or operator to the mobile home owner prior to his signing the lease or entering into a rental agreement. A copy of the rules and regulations also shall be posted in the recreation hall, if any, or some other conspicuous place in the park. A mobile home park rule or regulation shall be presumed to be reasonable if it is similar to rules and regulations customarily established in other mobile home parks located in this state or if the rule or regulation is not immoderate or excessive.
"`(d) Change in use of land comprising the mobile home park or a portion thereof on which a mobile home to be evicted is located from mobile home lot rentals to some other use; provided that all tenants affected are given at least ninety (90) days notice, or longer if provided for in a valid lease, of the projected change of use and of their need to secure other accommodations'
"is a constitutional and valid exercise of the police power of the State by the Florida Legislature in its endeavor to enact laws which are beneficial to and in *891 furtherance of the welfare, health and safety of the people of the State of Florida?
"On consideration of the great public importance of the question presented, and the stipulation of counsel, and pursuant to Rule 4.6 of the Florida Appellate Rules [32 F.S.A.],
"IT IS ORDERED by the Court that said question of constitutionality be and the same is hereby CERTIFIED to the Supreme Court of Florida for instruction."
The parties have agreed by stipulation that the salient facts in the instant litigation leading to the certification of the question are as follows:
"1) The cause is in the nature of a consolidation of five actions for eviction from Ravenswood Mobile Home Park, Fort Lauderdale, Florida.
2) Defendants rely upon Florida Statute Section 83.271, numbered 83.69, F.S.A., as a defense to the actions for possession, the Plaintiffs' complaints for possession not being predicated on the grounds for eviction established by that section.
3) Plaintiffs allege that Florida Statute Section 83.271, renumbered 83.69 is unconstitutional as applied to them in these actions to evict Defendants from their mobile home park.
4) The question of the constitutionality is one of great public significance, since some 700,000 people in the State of Florida are affected by the subject statute."
Subject to certain caveats hereinafter set forth, we answer that F.S. Section 83.69, F.S.A. is facially constitutional and does not violate the due process and equal protection clauses of the constitutions of the United States and the State of Florida. We conclude that Section 83.69 is a valid exercise of the police power.
The object of the statute is to ameliorate and correct as far as possible by exercise of the police power what the Legislature has found to be evils inimical to the public welfare in the subject considered. Protection of mobile home owners from grievous abuses by their landlords, or mobile home park owners, was found by the Legislature to be essential.
As documented by the 1970 report of Professor Cubberly for the State Department of Community Affairs, and reaffirmed by the Governor's 1974 Mobile Home Task Force, we note that most people who live in mobile homes usually spend several thousands of dollars to purchase a home, usually from a mobile home park owner or an associated dealer. Most mobile home owners find they must also rent the lot on which their mobile home is to be placed from their mobile home dealer or his associate. In most instances they become month-to-month tenants, subject to being evicted on fifteen days' notice, although their "home," with its wheels and hitch removed, appears to have permanence of location, being tied down on the lot as state law requires and being undergirded with a poured cement base. A great catch in the eviction removal process, as the Governor's Task Force noticed, is that often under modern conditions there is no ready place for an evicted mobile home owner to go due to a shortage of mobile home spaces in many areas of the state.
There has developed because of space shortage what is known as the "closed park," from whose owners a prospective tenant must either buy a new mobile home in order to get in, although he may already own his "used" or "removed" home from a park from which he had to move; or the park owner may accept the "used" or "removed" home in his park only upon payment of a high entrance fee.
A mobile home is a prefabricated structure built to specifications established by state law. It has all the conveniences of a modern apartment, and often has more room.
*892 A "mobile" home is not actually mobile, and even an owner who does not encounter "closed park" problems often finds it is quite expensive to remove a home and relocate it because of the incidental costs of labor and materials and towing once the home has been "cemented" onto a lot.
If mobile home park owners are allowed unregulated and uncontrolled power to evict mobile home tenants, a form of economic servitude ensues rendering tenants subject to oppressive treatment in their relations with park owners and the latters' overriding economic advantage over tenants.
Regulatory laws that applied to the old tin-can tourists and their easily movable trailers and even those applicable nowadays to rental apartments are inadequate for the regulation of mobile homes under conditions prevailing today. The Legislature finally recognized by Section 83.69 that a hybrid type of property relationship exists beween the mobile home owner and the park owner and that the relationship is not simply one of landowner and tenant. Each has basic property rights which must reciprocally accommodate and harmonize. Separate and distinct mobile home laws are necessary to define the relationships and protect the interests of the persons involved.
F.S. Section 83.69, F.S.A. establishes the classification of mobile home park owners as distinguished from other landlords. The basis for this classification lies in the different nature of mobile homes as outlined hereinabove. Mobile home park owners are landlords in the general sense of the term. Their tenants rent from them only that small area of land on which the mobile home sits. The home itself is privately owned by the resident and is separately treated for taxation by a license tax. Section 1(b), Article VIII, State Constitution, F.S.A.
Home ownership is an important aspect of family life. Most people want to own their own homes, and with the shortage in housing, coupled with exorbitant real estate prices and skyrocketing interest rates, a mobile home appears to be a thrifty and prudent investment. Having purchased one, the owner by requirement of statute or ordinance ordinarily must locate his home in a park. The classification of the park owner who rents small lots to individual home owners, as distinguished from the landlord who rents apartments comprising a few rooms in a landlord-owned building, is rational and nondiscriminatory.
Where legislation is based on inherent distinctions between one specified business and others, and where there can be no evidence presented which could negate the existence of a reasonable relationship between the purpose of the act and the class included, it must be found to be constitutional. Adams v. Sutton, 212 So.2d 1 (Fla. 1968), App. dismissed 393 U.S. 404, 89 S.Ct. 681, 21 L.Ed.2d 630, reh. den. 393 U.S. 1124, 89 S.Ct. 988, 22 L.Ed.2d 132 and Daniels v. O'Conner (Fla. 1971), 243 So.2d 144.
Unlike the tenant in an apartment house who, upon eviction, merely has personal possessions to move, the mobile home tenant, renting space in a lot or park, has to incur additional expenses and problems in having the mobile home itself transported to another site upon eviction. Furthermore, the mobile home park owners, in trying to prorate many newer sales of mobile homes without sufficient land area on which to locate them, may resort to eviction of present tenants in order to make future sales. These problems affecting the special interests and necessities of a large segment of the state's citizenry were given legislative attention. Accordingly, since the classification of mobile home park owners, for the reasons outlined, rests upon differences which bear a reasonable and just relation to the objectives and purposes of Section 83.69 its constitutionality should be upheld.
*893 There are now some 700,000 mobile home dwellers in Florida most of whom absent the benefit of Section 83.69 would be subject to being evicted on 15 days' notice for no reason except the park owner's desire to be rid of them. The state's police power under the Constitution permits the Legislature to correct or ameliorate evils of the magnitude explicated which directly affect so large a number of people, provided no constitutional guarantees are abridged.
There is a wealth of case authority supporting the constitutionality of F.S. Section 83.69, F.S.A. Numerous decisions have upheld acts serving purposes closely analogous to the subject statute.
In State v. Shack (1971), 58 N.J. 297, 277 A.2d 369, the New Jersey Supreme Court stated:
"Property rights serve human values. They are recognized to that end, and are limited by it... ." (at 303, 277 A.2d at 372)
In Forde v. City of Miami Beach (1941), 146 Fla. 676, 1 So.2d 642, this Court said:
"... it is no longer questioned ... that the right of an urban owner to the free use of his property may be regulated by a legitimate exercise of the public power, and when so asserted, fairly and impartially in the interest of the ... general welfare, the courts will not substitute their judgment [therefor] ..." (at 645)
It appears to us from the facts outlined that the classification of mobile home park owners for regulatory purposes has a justifiable and reasonable basis. Numerous cases have sustained analogous statutory classifications which rest upon differences that are inherently real and practical. E.g., see Adams v. Sutton, supra.
Defendants cite many familiar cases treating the general subject of constitutionality of regulatory statutes and the judicial deference to be accorded in passing upon them which hold courts are not concerned with the wisdom or policy of statutes; every reasonable doubt must be resolved in favor of an act; courts have the obligation to sustain legislation wherever possible; statutes are presumed valid until their unconstitutionality is shown beyond reasonable doubt; a large discretion is vested in the Legislature to determine the public interest and the measures for its protection; and if an act can be rationally interpreted to harmonize with the Constitution, it is the duty of the court to adopt that construction. We respect and apply those settled principles herein.
Reasonable restriction on the use of one's property to promote the public welfare is an accepted principle of law. See City of Miami Beach v. Ocean and Inland Co. (1941), 147 Fla. 480, 3 So.2d 364; Hav-A-Tampa Cigar Co. v. Johnson (1941), 149 Fla.. 148, 5 So.2d 433; City of Miami Beach v. Texas Co. (1940), 141 Fla. 616, 194 So. 368, 128 A.L.R. 350; and Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.
We conclude that F.S. Section 83.69, F.S.A. is valid and must stand. Our interpretation is that thereunder a mobile home park owner or operator may evict a mobile home owner only on the following grounds: nonpayment of rent or conviction of a violation of a law or an ordinance as defined in subsection (1)(b); violation of any reasonable rule or regulation established by the park owner or operator as prescribed and limited in subsection (1)(c); or change in the use of the land comprising the mobile home park or a portion thereof as prescribed and limited in subsection (1)(d).
If the rules and regulations established by the mobile home park owner or operator are equal, nondiscriminatory, and reasonable as to any class or classes of mobile home owners in his park, they may provide for periodic adjustment of monthly or other term rentals. However, it is not intended by the statute that adjustment of rentals or any other regulation or rule will be used to discriminate among mobile home *894 park tenants or any class therein, or to arbitrarily remove them from the park; that is to say the same shall not be used to circumvent the intent and purposes of any provision of Section 83.69.
Insofar as F.S. Section 83.69, F.S.A. is directly contrary or repugnant to other laws relating to landlords and tenants (particularly F.S. Section 83.41 and Section 83.62, F.S.A.) either enacted earlier in time or enacted in pari materia, it takes precedence thereover. To be meaningful and to avoid an absurd result, Section 83.69 necessarily supersedes such conflicting laws. Its purpose is to correct or ameliorate the specific abuses outlined herein in the relationship between mobile home park owners and their tenants and to do so logically conflicting laws to such specific purpose must yield.
It is contemplated by the statute that the trial courts will carefully scrutinize any deviation from the norm of usual rental agreements or rules or regulations of park owners or operators in order to protect mobile home owners from circumvention of the rights declared to be afforded them by Section 83.69. The rules and regulations which a mobile home park owner or operator adopts must not be designed to indirectly circumvent the positive protection provisions of Section 83.69.
Our answer to the certified question is contained in our foregoing opinion and need not be further explicated.
Our answer presupposes that if further proceedings are necessary below they will be in accord herewith.
ADKINS, C.J., and BOYD, McCAIN and OVERTON, JJ., concur.
ROBERTS, J., concurs specially with opinion, in which BOYD, McCAIN and OVERTON, JJ., concur.
DEKLE, J., dissents.
ROBERTS, Justice (specially concurring).
I concur with the majority opinion upholding the constitutionality of Section 83.69, Florida Statutes, F.S.A., for the reasons therein stated and for the reasons expressed in Palm Beach Mobile Homes v. Strong, Fla., 300 So.2d 881, Opinion filed July 10, 1974.
However, I believe, in accordance with Palm Beach Mobile Homes v. Strong, supra, that "[t]he legislature has specifically recognized the right of the mobile home park owner or operator to establish and publish reasonable rules and regulations relating to tenants in the park. Recognizing the perpetual occupancy rights on another's property cannot, consistent with the constitution, be granted by law, we must construe the act in such a manner as to preserve its purpose while operating within the framework of the Constitution of Florida and of the Constitution of the United States. We, therefore, find that it is not inconceivable that one rule adopted by a mobile home park owner be that the landlord can terminate the tenancy after substantial duration and a park rule to that effect would be consistent with the remedies sought to be accomplished by the legislature provided that the notice time was for a reasonable period, and we cannot say that a rule requiring vacancy on at least twelve months' or more notice would be unreasonable. Anything less than twelve months would be unreasonable. The abbreviation of the tenancy must be consistent with the total circumstances and not inconsistent with the existing evils recognized by the legislature nor the remedies sought to be accomplished."
BOYD, McCAIN and OVERTON, JJ., concur.