**JOHNSON, et al v. STATE DEPARTMENT OF BUSINESS REGULATION.**
No. 75-1382.
Circuit Court, Leon County.
December 3, 1975.

Cynthia S. Tunnicliff and Guyte P. McCord, III, of Law Office of Sam Spector, Tallahassee, for the plaintiffs.

Charles S. Ruberg, Assistant Attorney General, and Charles L. Curtis, Department of Business Regulation, for the defendant.

HUGH M. TAYLOR, Circuit Judge.

On a complaint seeking declaratory relief, answer and motion for summary judgment, there is squarely presented for adjudication the constitutional validity of Chapter 75-61, Laws of Florida, which provides —

Section 1. Section 711.465, Florida Statutes, is created to read:

"711.465 It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in leases for recreational facilities or other commonly used facilities serving residential cooperative units or management contracts for residential cooperatives, and such clauses are hereby declared void for public policy. For the purposes of this section, an escalation clause is any clause which provides that the rental under the lease or fee under the contract shall increase at the same

percentage rate as any nationally recognized and conveniently available commodity or consumer price index.

Section 2. Section 711.236, Florida Statutes, is created to read:

711.236 It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in leases or management contracts for condominiums, and such clauses are hereby declared void for public policy. For the purposes of this section, an escalation clause is any clause in a condominium lease or management contract which provides that the rental under the lease or fee under the contract shall increase at the same percentage rate as any nationally recognized and conveniently available commodity or consumer price index.

The validity of the statute must be considered in two aspects — (1) As it applies to contracts entered into prior to its enactment, and (2) as it applies to contracts entered into after its enactment.

Plaintiffs are lessors of recreational facilities in two long-term leases containing escalation clauses; one providing for an initial rental with periodic adjustment of rent based upon fluctuations, up or down, in the "consumer price index", as published by the federal Department of Labor; and the other providing for periodic adjustment of rent based upon fluctuations, up or down, in the "cost of living index", as published by the federal Department of Labor, with a minimal rental. Each of these leases was executed prior to the enactment of Chapter 75-61 and has more than ninety years to run.

As to these leases, Chapter 75-61 is void because it is in violation of applicable provisions of the state and federal constitutions.

Section 10, Article I of the state constitution and §10, Article I of the federal constitution forbid the enactment of laws impairing the obligations of contracts. Quite obviously, Chapter 75-61, if valid, impairs the escalation clauses in plaintiffs' leases.

The defendants insist, and plaintiffs agree, that the contract clauses of both the state and federal constitutions are subject to the proper exercise of the police power.

The scope of the police power is not unlimited, nor are its bounds to be measured solely by legislative determination. The contract clause must be given a reasonable area of operation. This principle is well stated by Mr. Justice Roberts in the case of *Palm Beach Mobile Homes, Inc., v. Strong*, 300 So.2d 881 (which will be discussed in greater detail hereinafter), as follows —

"Freedom to contract and a citizen's right to pursue a lawful business which are valuable property rights are subject to reasonable restraint in the interest of the public

welfare. The right to contract is the general rule and restraint of this right by the police power is the exception to be exercised when necessary to secure the comfort, health, welfare, safety and prosperity of the people."

Defendants argue that the public need, which the legislature considered to be sufficient to justify the abrogation of plaintiffs' contract rights, is expressed in the preamble to Chapter 75-61, as follows —

*Whereas,* escalation clauses in leases for recreational facilities or other commonly used facilities serving condominiums and residential cooperative units and management contracts for condominiums and residential cooperatives are inflationary in nature, and

*Whereas,* such clauses cause a rise in the cost of operation of recreational and common facilities and management services which have no relation to the increase in costs of bringing those facilities and services to the unit owners, and

*Whereas,* an inflationary economy concerns the general welfare of the citizens of Florida, . . .

It would appear from these recitals that the legislature felt that the need to curb inflation was the imperative public interest which motivated and justified the enactment of Chapter 75-61.

But the Supreme Court has affirmed the proposition that —

"An increase in the cost of living [an inflationary spiral] alone is not a justification for rent control legislation which limits the amount of rent which a tenant may be required to pay." *City of Miami Beach v. Fleetwood Hotel, Inc.,* 261 So.2d 801.

It would seem thoroughly established that the inflationary tendency of the escalation clauses is not sufficient to justify the exercise of the police power in the manner attempted.

Even though the reason assigned by the legislature for adopting this statute is insufficient to justify its enactment, if any other reasonable basis can be found to sustain its validity it is the duty of the court to hold the statute valid.

The defendants argue that the escalation clauses are "inequitable", "unconscionable" and result in the lessors "reaping inordinate and unjustified profits." There are three reasons why this is an insufficient basis for the exercise of the police power in derogation of the contract clause —

*First:* In measuring the constitutional validity of the statute, the leases must be presumed to be the result of arms-length transactions between competent persons. The free-enterprise capitalistic system,

which is the foundation of our economy, contemplates that business transactions will often result in large profits to the astute. In the absence of fraud, undue influence or overreaching cognizable in a court of equity (which must be determined on the facts of each case), the lessors are entitled to the fruits of their bargains.

*Second:* If, as is contended, the cost of living and consumer price index are to continue to rise and thus increase the rents of the lessees, the application of the statute would be even more unjust and inequitable to the lessors in that it would freeze, for more than ninety years, the return which they would receive on their capital investment in the recreational facilities.

*Third:* The legislature in 1974 enacted Chapter 74-104, Laws of Florida, which provides, in part, with respect to leases of this kind —

> (6) If a lease is of a residential unit or of recreational facilities or other commonly used facilities serving residential units, the rent shall be a stated sum payable periodically that may be adjusted only at intervals of not less than ten (10) years. If the rent is adjusted, the adjustment shall be by increase and decrease in accordance with the changes in a nationally recognized and conveniently available commodity index except that the lease may preclude a decrease below the rent originally required.

This enactment is a legislative determination that escalation of these rentals on the basis of a "nationally recognized and conveniently available commodity index" is just, reasonable and proper. This determination was made after the contracts in question were executed. The court will not assume, and the 1975 legislature did not declare, that contracts which were just and reasonable in 1974 had, in one year, become so injurious to the public welfare as to justify the exercise of the police power to declare them illegal, invalid and unenforceable.

Defendants, in seeking to sustain the statute, rely strongly upon the cases of *Palm Beach Mobile Homes, Inc. v. Strong,* supra and *Stewart v. Green,* 300 So. 2d 889, both of which sustain a statute regulating the operation of mobile home parks.

Careful reading of the opinions in these cases leads to the conclusion that they do not support the position of the defendants. In both these cases the court was dealing with what is now §83.69, Florida Statutes, which relates to the eviction of tenants from mobile home parks, and which forbids such eviction except for enumerated causes. Termination of the tenancy by expiration, or violation of the terms of a lease, or upon notice in cases of a month-to-month or year-to-year tenancy, is not one of the causes which permit immediate eviction of a tenant.

The validity of the statute was sustained, but the majority opinion in *Strong* and the specially concurring opinion in *Green,* concurred in by a majority of the court, make it abundantly clear that the conclusion reached was based upon the theory that the prohibition against eviction of tenants was directed to the procedure to be followed in enforcing the landlord's right to possession of his property.

In *Strong,* Mr. Justice Roberts, writing for the court, said —

Freedom to contract and a citizen's right to pursue a lawful business which are valuable property rights are subject to reasonable restraint in the interest of the public welfare. The right to contract is the general rule and restraint of this right by the police power is the exception to be exercised when necessary to secure the comfort, health, welfare, safety and prosperity of the people.

We recognize the liberty and property right that every owner of a mobile home and every owner or operator of a mobile home park possesses to use his property in his own way and for his own purposes subject only to the restraint necessary to secure the public welfare. However, we find that §83.271, Florda Statutes, constitutes a reasonable and necessary regulation of that right in view of the peculiar nature and problems presented by mobile homes. . . .

This legislation was enacted to provide mobile home owners with security in dealings with mobile home park owners and at the same time impose the least restrictions on the landlord. . . .

Although we find that §83.271, Florida Statutes, is constitutionally valid, we are fully cognizant that a contention might be made that the act is invalid because it would have the effect of permanently depriving the owner of the land upon which a mobile home park is located for all times of the management in the use of his land for other purposes than a mobile home park. This would ordinarily raise serious doubts as to the constitutionality vel non of the act; however, that question has become moot in that the 1973 Legislature has cured the defects by enacting into law the following:

> "(d)   Change in use of land comprising the mobile home park or a portion thereof on which a mobile home to be evicted is located from mobile home lot rentals to some other use, provided all tenants affected are given at least ninety (90) days notice, or longer if provided for in a valid lease, of the projected change of use and of their need to secure other accommodations. . . ."

The legislature has specifically recognized the right of the mobile home park owner or operator to establish and publish reasonable rules and regulations relating to tenants in the park. Recognizing the perpetual occupancy rights on another's property cannot, consistent with the constitution, be granted by law, we must construe the act in such a manner as to preserve its purpose while operating within the framework of the Constitution of

Florida and of the Constitution of the United States. We, therefore, find that it is not inconceivable that one rule adopted by a mobile home park owner be that the landlord can terminate the tenancy after substantial duration and a park rule to that effect would be consistent with the remedies sought to be accomplished by the legislature *provided* that the notice time was for a reasonable period, and we cannot say that a rule requiring vacancy on at least twelve months' or more notice would be unreasonable. Anything less than twelve months would be unreasonable.

In *Green,* Mr. Justice Ervin said —

. . . Most mobile home owners find they must also rent the lot on which their mobile home is to be placed from their mobile home dealer or his associate. In most instances they become month-to-month tenants, subject to being evicted on fifteen days' notice, although their "home," with its wheels and hitch removed, appears to have permanence of location, being tied down on the lot as state law requires and being undergirded with a poured cement base. . . .

If mobile home park owners are allowed unregulated and uncontrolled power to evict mobile home tenants, a form of economic servitude ensues rendering tenants subject to oppressive treatment in their relations with park owners and the latters' overriding economic advantage over tenants. . . .

Unlike the tenant in an apartment house who, upon eviction, merely has personal possessions to move, the mobile home tenant, renting space in a lot or park, has to incur additional expenses and problems in having the mobile home itself transported to another site upon eviction. . . .

There are now some 700,000 mobile home dwellers in Florida most of whom absent the benefit of §83.69 would be subject to being evicted on 15 days' notice for no reason except the park owner's desire to be rid of them. . . .

Reasonable restriction on the use of one's property to promote the public welfare is an accepted principle of law. . . .

If the rules and regulations established by the mobile home park owner or operator are equal, nondiscriminatory, and reasonable as to any class or classes of mobile home owners in his park, they may provide for periodic adjustment of monthly or other term rentals. However, it is not intended by the statute that adjustment of rentals or any other regulation or rule will be used to discriminate among mobile home park tenants or any class therein, or to arbitrarily remove them from the park; that is to say the same shall not be used to circumvent the intent and purposes of any provision of §83.69. . . .

When the opinions are read as a whole, they would appear to hold that the operation of mobile home parks is a business fraught with a public interest; that the police power is broad enough to justify reasonable regulation of those engaged in that business; that the evil sought to be cured by (now) §83.69, Florida Statutes, was

the arbitrary termination of tenancies from ulterior motives; that reasonable rules may be adopted by operators of mobile home parks for the termination of month-to-month or year-to-year tenancies for any reason, but that, in order to be reasonable, notice of not less than one year would be required unless some legal cause exists justifying termination of the tenancy.

So construed, these opinions are entirely harmonious with two well-recognized rules — (1) That businesses fraught with a public interest such as common carriers, millers and other public utilities must serve the public without discrimination and may not arbitrarily refuse service to any person, and (2) that a tenancy at will or from week to week, month to month or year to year may not be terminated and the tenant evicted without reasonable advance notice.[1] The unusual circumstances surrounding the operation of mobile home parks, as pointed out, are such as to make a year the minimum reasonable notice required to terminate a tenancy on a mobile home park.

The foregoing construction of *Strong* and *Green* is in harmony with the shortly earlier pronouncements of the court in *City of Miami Beach v. Fleetwood Hotel, Inc.*, supra. It is significant that the majority opinions in *Strong* and *Fleetwood* and the specially concurring opinion in *Green* (concurred in by a majority of the court) were authored by the same justice and, logically, should be construed together in determining the proper relationship between the contract clauses in the constitutions in relation to the police power.

While the courts are always reluctant to declare an act of the legislature, a coordinate branch of government, to be invalid, it has been accepted since *Marbury v. Madison* that it is the duty of the courts to protect the rights of litigants. When there is conflict between a statute and a constitutional right, the courts must refuse to give effect to the statute. This is true because the constitutions are the supreme law of the nation and the states, respectively.

As to leases entered into subsequent to the effective date of Chapter 75-61, the constitutional provisions against impairing of the obligations of contracts are obviously, inapplicable.

However, plaintiffs argue that the statute violates the provisions of §2, Article I of the state constitution, which guarantees the "right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property."

---

[1] This may be compared to the common law rule that six months' notice was required to terminate a tenancy from year to year.

These enumerated rights are all subject to the proper exercise of the police power. It has long been recognized that a business which is of a public nature, or in which the public has a vital interest, is subject to regulation by law, so long as the regulations do not go to the extent of depriving citizens of constitutional rights. A legislative determination that the business of establishing, operating and managing condominiums and related facilities is within that class of business which may be reasonably regulated is not, *on its face,* so unreasonable as to be *clearly* invalid.

There is a vast difference between proscribing escalation clauses of a limited and specific type in future leases, leaving to the parties the right to base escalation of rents on other factors, and declaring void the escalation in existing ninety-year leases, leaving the remainder of these leases enforceable but depriving the lessors of any right of adjustment of rents over that period of time.

Finally, plaintiffs say that as of future leases Chapter 75-61 is in violation of §2, Article I of the state constitution and the Fourteenth Amendment to the federal constitution because it denies condominium owners[2] the equal protection of the law in that rentals of property of different types, or used for different purposes, may be made adjustable on the basis of some "nationally recognized and conveniently available commodity or consumer price index."

The complaint does not allege sufficient facts to justify a decision on this question at this time, for two reasons —

*One:* It is not shown that plaintiffs, or any of them, now have facilities for rent, or in process of construction, or customers who would rent facilities with esclaration clauses of the proscribed kind.

*Two:* There is no showing that there is, in fact, any unreasonable classification of the type of contracts proscribed by Chapter 75-61. There is not a sufficient showing that any other contracts contain similar escalation clauses, and the court cannot take judicial notice that such contracts exist. Nor is there any showing that if such contracts do exist they are not in relation to properties, or for purposes so different from plaintiffs', that different classification for purposes of regulation is constitutionally permissible.

It is, thereore, adjudged and declared —

(1) That Chapter 75-61 is wholly invalid and unenforceable to the extent that it declares invalid and unenforceable contracts entered into before it became effective.

---

2. This term will be used to include other similar types of ownership affected by Chapter 75-61.

(2) No coercive writ will be issued to control the action of state officers unless it be made to appear that they will not respect the foregoing declaration, but jurisdiction is retained to grant such relief if it becomes necessary.

(3) Plaintiff's motion for summary judgment as to the invalidity of Chapter 75-61 as it applies to contracts entered into after it became effective, or which may be entered into in the future, is denied without prejudice to its being renewed upon a sufficient showing in this or other proceedings.