ANSTEAD, Judge.
At issue is whether the owner of a mobile home park has the right to make permanent improvements within the park when the construction of such improvements will require the utilization of an existing mobile home lot and the displacement of the tenant occupying such lot. We hold that the owner does have the right to make such improvements.
Appellees James and Marion Watt are tenants of a mobile home lot located in the Deerfield Beach Mobile Home Park. In May of 1979, the park was purchased by the appellant. Soon thereafter appellant had a home for its president, Joe Scott, constructed near the lot upon which appellees’ mobile home is situated. Appellant planned to provide Scott’s home with a driveway and yard space and to construct other permanent improvements to the park that would require the use of appellees’ lot. All of these improvements were permissible under the existing zoning and building laws. Pri- or to commencing construction of the improvements appellees were asked to relocate to another lot appellant made available to them in the park. Rather than acquiesce, appellees filed suit against appellant, seeking entry of a declaratory judgment that Section 83.759(l)(d), Florida Statutes (1973), absolutely barred the park owner’s planned improvements. No claim was made by appellees that appellant was acting in bad faith or that appellant did not intend to actually construct the improvements involved. Appellant counterclaimed, seeking a holding that it was entitled to proceed with the improvements contemplated. A bench trial resulted in the entry of a final judgment which held that appellant was barred from making any improvements to its property involving the displacement of mobile home lots unless the appellant’s land was rezoned from its present use as a mobile home park to some other use.
Section 83.759, Florida Statutes (1973), popularly referred to as the Florida Mobile Homes Landlord and Tenant Act, sharply limits the right of mobile home park owners to evict tenants to certain enumerated circumstances. The only circumstance pertinent to the issue here is contained in Section 83.759(l)(d) which provides:
83.759 Mobile home parks; eviction, grounds, proceedings.—
(1) A mobile home park owner or operator may not evict a mobile home or a *805 mobile home dweller other than for the following reasons:

(d) Change in use of land comprising the mobile home park or a portion thereof on which a mobile home to be evicted is located from mobile home lot rentals to some other use, provided all tenants affected are given at least 6 months’ notice, or longer if provided for in a valid lease, of the projected change of use and of their need to secure other accommodations.
In limiting the application of Section 83.-759(l)(d) to those situations in which a mobile home park owner or operator has secured a zoning variance to use the land for some purpose other than a mobile home park, we believe the judge below overlooked the standard rule of statutory construction that “words of common usage, when used in a statute, should be construed in their plain and ordinary sense.” Pedersen v. Green, 105 So.2d 1, at 4 (Fla.1958). The statute authorizes use of existing mobile home lots if there is a “[cjhange in use of land comprising the mobile home park or a portion thereof ... from mobile home lot rentals to some other use.” (Emphasis supplied.) In our view, a change in the “use” of a piece of land is plainly not the same thing as a change in the zoning of the land; the words “use” and “zoning” are simply not synonymous in this context.
We are also obligated to construe a statute to avoid unreasonable consequences. Wakulla County v. Davis, 395 So.2d 540 (Fla.1981). In our view, the construction adopted by the trial court would lead to several absurd results which we do not believe were intended by the legislature.[1] For instance, this interpretation would effectively preclude mobile home park owners or operators from ever moving tenants in order to improve mobile home parks no matter how necessary the improvement. Such an interpretation would require us to ascribe an intent on the part of the legislature to “freeze” the configuration of mobile home parks in exactly the state they existed when this legislation was passed. This construction would also permit the park owner to displace all of the tenants in order to use the land for some totally different purpose, such as a used car lot, but would bar the displacement of even a single tenant in order to construct a needed improvement to the park. On the other hand, since the statute operates only to regulate evictions, this construction would appear to permit park owners to utilize existing lots to make improvements so long as those lots are not occupied, but would bar such improvements when occupied lots are to be utilized and tenants displaced. We do not believe the legislature intended that the park owner’s use of his land should turn upon such fortuitous circumstances.
Furthermore, the construction adopted below would appear to endanger the constitutional validity of the entire Mobile Homes Landlord and Tenant Act contrary to the interpretation of the Act by the Supreme Court in Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla.1974). In Strong the court upheld the constitutionality of the then Sections 83.271(l)(a), (b), and (c), Florida Statutes (Supp.1972),[2] in large part be *806 cause subsection (d) left the landowner free to use his land for other purposes:
Although we find that Section 83.271, Florida Statutes, is constitutionally valid, we are fully cognizant that a contention might be made that the act is invalid because it would have the effect of permanently depriving the owner of the land upon which a mobile home park is located for all times of the management in the use of his land for other purposes than a mobile home park. This would ordinarily raise serious doubts as to the constitutionality vel non of the act; however, that question has become moot in that the 1973 Legislature has cured the defects by enacting into law the following:
“(d) Change in use of land comprising the mobile home park or a portion thereof on which a mobile home to be evicted is located from mobile home lot rentals to some other use, provided all tenants affected are given at least ninety (90) days’ notice, or longer if provided for in a valid lease, of the projected change of use and of their need to secure other accommodations.”
Id., at 887. The court thus found that the 1973 addition of that portion of the statute at issue here (then Section 83.271(l)(d), later Section 83.69(l)(d) and now, in essence, 83.759(l)(d)) validated the entire eviction scheme of the Florida Mobile Homes Landlord & Tenant Act by granting mobile home park owners or operators the right to use their land for purposes other than mobile home rental. Sub judice we believe that Section 83.759(l)(d), in order to pass constitutional muster, must also be construed to grant mobile home park owners the right to utilize existing mobile home lots to make legitimate improvements to mobile home parks.[3]
We are in agreement with appellees that the legislature intended to grant broad rights to mobile home park occupants to be free from unreasonable evictions.[4],[5] Indeed, we attach much significance to the fact that no allegations of fraud or bad faith have been lodged by appellees against appellant. In our view, proof of bad faith on the part of the park owner would constitute a valid defense to any attempt to remove tenants from existing mobile home lots and could serve as the basis for an independent cause of action by tenants wrongfully evicted through fraudulent representations of contemplated improvements by the park owner.
For all of the foregoing reasons, we reverse the judgment entered by the trial court and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. This interpretation would also bar the park owner from converting the park to some other use that might be permissible under the existing zoning. For instance, even if the existing zoning permitted rental apartments the park owner, under the trial court's construction of Section 83.759(l)(d), would still not be permitted to construct apartments if such construction would displace current tenants. This is clearly contrary to the holding in Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla.1974).

. Later Sections 83.69(1 )(a), (b) and (c) and currently, in essence, Sections 83.759(l)(a), (b) and (c). Section 83.271(l)(a), (b), and (c) provides:
83.271 Mobile home parks; eviction, grounds, proceedings.—
(1) A mobile home park owner or operator may not evict a mobile home dweller other than for the following reasons:
(a) Nonpayment of rent.
(b) Violation of some federal, state or local ordinance which may be deemed detrimental to the safety and welfare of other dwellers in the mobile home park.
(c) Violation of any rule or regulation established by the park owner or operator, provided the mobile home owner received writ *806 ten notice of said violation at least thirty days prior to the date he is required to vacate. A copy of all rules and regulations shall be delivered by the park owner or operator to the mobile home owner prior to his signing a lease or entering into a rental agreement. A copy of the rules and regulations also shall be posted in the recreation hall, if any, or some other conspicuous place in the park.

. The constitutionality of Section 83.759(l)(d) (then Section 83.69(l)(d)) was upheld in Stewart v. Green, 300 So.2d 889 (Fla.1974), as a valid exercise of the state’s police power.

. [A] hybrid type of property relationship exists between the mobile home owner and the park owner and that relationship is not simply one of landowner and tenant. Each has basic property rights which must reciprocally accommodate and harmonize.
Stewart v. Green, Id. footnote 3, 300 So.2d 889 at 892.

.A member of the 1972 Legislature gave a deposition on behalf of appellees to the effect that the Legislature intended to go as far as the courts would let them go in restricting evictions. While this intent is probably inferable from the face of the statute, we believe the lower court’s consideration of the deposition was technically improper under McLellan v. State Farm Mutual Automobile Ins. Co., 366 So.2d 811 (Fla. 4th DCA 1979), wherein this court held that the testimony of a single legislator was not admissible to demonstrate the intent of the legislature. Neither party cited McLellan to the trial court.