## SHADOW HILLS ASSOCIATES v. MASON
### Case No. CO 84-2174
County Court, Orange County

September 18, 1984

### APPEARANCES OF COUNSEL

**Pat Phillips** for plaintiff.

**Tobe Lev** for defendant.

### OPINION OF THE COURT

GEORGE A. SPRINKEL IV, County Judge.

This cause came on to be heard on the plaintiff's motion to strike the defendant's affirmative defense of retaliation. The Court requested memoranda from both parties and entertained oral argument. Upon careful review of the memoranda of the respective parties, and the argument of respective counsel, it is hereupon

ORDERED and ADJUDGED as follows:

The plaintiff's motion to strike the defendant's affirmative defenses, including her affirmative defense of retaliation, is hereby DENIED.

### *OPINION*

The Court has carefully examined the issue of whether a tenant in a

mobile home park may raise an affirmative defense of retaliation by a landlord in an eviction proceeding based upon Section 83.579(1)(e), Florida Statutes (1982). This statute established that a mobile home park owner may evict a tenant

> "upon twelve (12) months' notice *without cause* provided that, upon service of such notice, the mobile home park owner notifies the mobile home owner of his election to evict either the mobile home or the mobile home owner, or both." (Emphasis added)

The plaintiff alleged that it served a twelve months' eviction notice upon plaintiff pursuant to the aforementioned statute on April 26, 1983, and that therefore, it had the right to evict the defendant for any reason or no reason, including, impliedly, a retaliatory reason.

The plaintiff's strong argument was based upon the recent case of *Bethke v. Friendly Village of Capok Mobile Home Park*, 449 So.2d 1009 (Fla 2d DCA 1984). Regrettably the opinion in *Bethke* consisted of a single, cryptic sentence. The Court is not convinced that *Bethke* purported to invalidate the retaliation defense in every instance where a mobile home park owner relies upon Section 83.759(1)(e), Florida Statutes (1982). On the contrary the *Bethke* court may have invalidated the plaintiff's retaliation claim only as a basis for *injunctive* relief because the plaintiff failed to properly allege it lacked an adequate remedy at law and faced irreparable harm. The Court may have believed the plaintiff had an adequate remedy at law by defending any eviction proceeding which followed the notice. See *Bowles v. Blue Lake Development Corp.*, 504 F.2d 1094 (5th Cir. 1974) where an injunction was vacated because equitable defenses were available in an eviction action.

Since the Court finds that *Bethke* is inconclusive upon this issue, it has examined carefully legislative intent and decisions in similar cases in deciding whether to recognize the affirmative defense of retaliation in this case. This Court has concluded that the legislature has manifested strong hostility toward the retaliatory eviction as evidenced by its various enactments, and the legislature and Court have further striven to protect mobile home owners from unreasonable and arbitrary evictions on numerous occasions. Because of this long history of legislative concern the Court is compelled to recognize the retaliation defense in this action.

Section 83.64, Florida Statutes (1983) explicitly forbids retaliatory evictions from residential tenancies covered by Part II of the Florida Landlord-Tenant Act. The language contained in Section 83.64, Florida Statutes is substantially similar to the language contained in Rule

121

2-11.07 of the Department of Legal Affairs purportedly promulgated pursuant to authority conferred by the Deceptive and Unfair Trade Practices Act, Chapter 501, Part II.[1]

There has never been an explicit prohibition against retaliatory evictions in the Florida Mobile Home Landlord and Tenant Act. However, the Florida Mobile Home Landlord and Tenant Act, both prior to 1982, and following the 1983 amendments, refuses to authorize evictions without cause. Neither party to this action has suggested that the 1983 amendments are retroactive and thereby applicable to this cause of action. However, the Court can examine these 1983 amendments as yet another manifestation of legislative concern to prevent arbitrary and unreasonable evictions.

The 1982 Florida Mobile Home Landlord and Tenant Act also contains explicit provisions protecting the right of mobile home owners to peaceably assemble in open public meetings and · communicate among themselves regarding problems relative to the park. See Sections 83.795 and 83.796, Florida Statutes (1982). It would defeat the legislative intent to permit a mobile home park owner to retaliate against a tenant for the exercise of these rights, under the guise of a "no cause" eviction.[2]

The Court finds the defendant's argument persuasive that judicial tolerance of "no-cause" evictions for retaliatory motives gravely damages the careful balancing of rights and responsibilities which the legislature has repeatedly attempted to achieve in Florida's mobile home parks. The defendant has alleged she and numerous fellow tenants are plaintiffs in an action pending in Circuit Court against the plaintiff to declare invalid or unconscionable several rent increases imposed by plaintiff, and to further enjoin alleged violations of plaintiff's statutory duties under Section 83.758. Defendant has also alleged she is president of the tenants' group. To refuse to recognize a retaliation defense under these circumstances could deal a fatal blow to a legislative scheme which seeks first to establish rights and protection for tenants, and then seeks to afford Court remedies to allow their vindication. Instead the Court would sanction conduct by a mobile park owner totally antagonistic to tenants' rights, and to the entire legislative scheme which provides remedies to vindicate those rights.

---

[1] The Fifth District Court of Appeals earlier declared this rule ultra vires. *State of Florida v. De Anza Corporation*, 416 So.2d 1173 (Fla. 5th DCA 1982).

[2] An affidavit in the file from defendant shows she circulated a petition in the park in her capacity as president of the tenant's association and forwarded it to the State Attorney's Office just three days before the effective date of the eviction notice served upon her by plaintiff.

This Court is mindful of the words of the Supreme Court in *Stewart v. Green*, 300 So.2d 889 (Supreme Court of Florida 1974):

> "If mobile home park owners are allowed unregulated and uncontrolled power to evict mobile home tenants, a form of economic servitude ensues rendering tenants subject to oppressive treatment in their relations with park owners and the latter's overriding economic advantage over tenants."

The plaintiff suggests that the eviction of defendant under these circumstances would not be "oppressive" since the plaintiff would be obliged by statute to buy her mobile home for 83% of fair market value should she be unable to relocate the home in another park. This statutory provision only relieves part of the harm a tenant experiences when an eviction is not only without cause, but also retaliatory in nature. Besides forfeiting 17% of the fair market value of her home should she fail to find a park in which to relocate, the defendant would also forfeit the exercise of her statutory, and possibly constitutional, rights. The ability of a park owner to retaliate in this fashion would indeed further conditions of "economic servitude". This is doubly true where it is alleged, as it is here, that defendant is chairman of a tenants' group involved in pending litigation.

Finally the Florida Mobile Home Landlord and Tenant Act imposed an obligation of good faith in the performance or enforcement of every rental agreement. Section 83.753, Florida Statutes (1982). At least one appellate court has suggested that proof of bad faith would constitute a valid defense to any attempt to remove tenants from existing mobile home lots. *Crown Diversified Industries, Inc. v. Watt*, 415 So.2d 803 (Fla 4th DCA 1982). An eviction motivated primarily by the tenant's exercise of statutory rights suggests bad faith on the part of a park owner who is obliged to conform all of its actions to the requirements of law and respect the rights of tenants. The Act's requirements that both parties act in good faith further supports the Court's belief that the right of a tenant to raise the defense of retaliation must be implied from the statute.

In the words of Trawick,

> As new causes of action are developed, new defenses are also developed. Changing technology and moral concepts may give rise to new defenses and cause the elimination or modification of old ones. Some defenses are created by statute while others arise because of the nature of the cause of action and are approved in court decisions. The list of affirmative defenses in Rule 1.100(d) is not definitive.

By recognizing a defense of retaliation under the facts of this case

123

this Court is not making any dramatic or novel departure. It is merely recognizing a defense which the Florida legislature has already explicitly recognized in Section 83.64, Florida Statutes and implying a remedy which must necessarily exist in order to preserve all of the statutory rights of mobile home owners. See also 30 Fla. Jur. Statutes, Section 170. To strike the defense, particularly given its strong factual predicate in this case, would be extremely inequitable.