# VILLAGE GREEN FEDERATION UNIT, INC., et al. v FLORIDA ATLANTIC ASSOCIATES, etc., et al.

Case No. 83-148-CA-17

Nineteenth Judicial Circuit, Indian River County

August 1, 1986

## APPEARANCES OF COUNSEL

**John T. Allen, Jr.** and **Christopher P. Jayson, John T. Allen, Jr., P.A.,** and **Clifford M. Miller** for plaintiffs.

**Roger W. LaJoie** for defendants.

## OPINION OF THE COURT

CHARLES E. SMITH, Circuit Judge.

### FINAL SUMMARY JUDGMENT

THIS CAUSE is before the Court on Plaintiffs' Amended Motion for

Partial Summary Judgment as to Count I and III of their Third Amended Complaint and centers on the issue of whether or not the Florida Statutes allow the conversion of an existing mobile home rental park into a condominium. The Plaintiffs have voluntarily dismissed Count II of the Third Amended Complaint and thus this Judgment constitutes a Final Summary Judgment.

The documents on file and the uncontradicted testimony before the Court upon Plaintiffs' Motion for Injunctive Relief, indicated that the Plaintiff corporation is an entity incorporated for the purpose of representing the mobile home owners or tenants in Village Green Mobile Home Park. The named individual Plaintiffs are residents of Village Green Mobile Home Park. On or about October 28, 1982, the individual Plaintiffs and all of the mobile home owners or tenants of Village Green Mobile Home Park received notice of the Defendants' intention to convert the mobile home park from a rental community where the Plaintiffs rent the lot on which they have placed their mobile homes to a condominium community created under and pursuant to Chapter 718, Fla. Stat.

Plaintiffs' Exhibit #1 "A" clearly establishes that a controversy exists between the Plaintiffs and the Defendants as to whether or not a condominium type of ownership may be created at Village Green Mobile Home Park. Plaintiffs' Exhibit #1 "A" includes a brochure showing that the Defendant sold the Plaintiff mobile home owners or tenants a style of living based upon the rental concept as opposed to the ownership concept. Exhibit #1 "B" is a document published by the Defendants entitled "Why Purchase a Mobile Home in a Rental Community" again urging the adoption of a style of life based upon renting as opposing to ownership of the land. Exhibits § 1 "C" and #1 "D" further underline the fact that the tenants at Village Green Mobile Home Park were enticed into the mobile home park upon the sales pitch highlighting the advantage of renting one's mobile home lot as opposed to owning one's mobile home lot.

Exhibit #1 "E" which was written to all of the residents of the mobile home park by the Defendants specifically and unequivocally indicating to them that their property is being converted to condominium by Florida Atlantic Associates. The Defendants have not filed any counter-affidavits denying the existence of these documents. The record indicates that the Defendants acknowledge sending the documents indicating the mobile home park would be converted to condominium after selling to the tenants a rental form of mobile home living.

The basis for the Court's reference to the exhibits on file is to find

that there exists a controversy between the Plaintiffs and Defendants as to the Plaintiffs' rights and immunities under and pursuant to Chapter 718, Fla. Stat., and Chapter 723, Fla. Stat., (Formerly Chapter 83, Part III, Fla. Stat.) as to whether or not the owner of an existing mobile home park in Florida may convert the mobile home park into a condominium form of ownership under Chapter 718, Fla. Stat., after having created a mobile home park which is governed exclusively by Chapter 723, Fla. Stat.

The interpretation and the determination of the question posed in this case is one of *LAW* and not of fact. The Court is called upon to examine Chapter 718, Fla. Stat., and Chapter 723, Fla. Stat., and determine whether or not the existing statutes and the intent of the legislature in regard to the problem posed in this case permits the conversion of an ongoing mobile home park into a condominium form of ownership. Since this determination is one of *law* and not of fact the Court that this matter is one which can and should be decided and disposed of on Motion for Summary Judgment. *Humphrys v. Jarrell*, 104 So.2d 404 (fla. 2d DCA 1958); *Beverage Canners, Inc. v. E. D. Green Corp.*, 276 So. 2d 239 (Fla. 3d DCA 1973).

There is no question that the mobile home owners or tenants of Village Green Mobile Home Park fall directly and squarely under the provisions of Chapter 723, Fla. Stat. Additionally, the Florida Supreme Court's landmark decision in *Palm Beach Mobile Homes, Inc. v. Strong*, 300 So.2d 881 (Fla. 1974) constitutes an important consideration in this decision. The Supreme Court clearly indicates that mobile homes are unique in our society and in fact the word "mobile" is a misnomer in that in fact "mobile homes" are not mobile. As noted by the Court:

Mobile homes come to rest in established parks, the wheels are generally removed, they are anchored to the ground, because of forces of the wind, connections with electricity, water and sewerage are made, awnings are frequently attached, and to a large degree they lose their mobility except, unless, and until the wheels are restored, disruption of electrical, water and sewer connections is had and a certain amount of dismantling and crating is had, all at a substantial expense of the owner of the mobile home who had bought such home with the exception of being able to remain in the park for a not unreasonably time so long as he abides by all the reasonable regulations established by the park owner. The removal from one park to another becomes more than a mere hitching to a truck or tractor and pulling it away. To a large degree, mobile homes are occupied by people in the lower income brackets who

cannot spend several hundred dollars at the mere whim of a lessor park. 300 So.2d at 886.

Therefore, the Supreme Court has noted as a matter of law that mobile homes in Florida's mobile home parks in reality become fixtures almost irrevocably attached to the leased space. This is obviously the situation in the case at bar. In addition, the Supreme Court in *Stewart v. Green*, 300 So. 2d 889 (Fla. 1974) recognized that there were additional problems created for mobile home owners or tenants. The Supreme Court recognized the existence of closed parks in which a tenant must either buy a new mobile home from the park owner in order to get a leased space, or pay a large entrance fee for the privilege. The Court further found that existing mobile homes cannot be simply moved from one mobile home park to another because of the existence of such closed parks. In sum, the closed parks do not allow new tenants to move their "used" mobile homes into the park, and do not accept "used" mobile homes except possibly under the payment of a high entrance fee. The Supreme Court also noted that the moving of a mobile home is prohibitive because of the physical inability to move the mobile home after it is attached to the lot and the great and extraordinary expense associated with such moving after the mobile home has been affixed to its rented lot in a mobile home park.

In light of the *Palm Beach* and *Stewart* decisions decided by our Supreme Court, and after an examination of Chapter 723, Fla. Stat., and its unique provisions, the Court can only conclude that the legislature has not intended to permit mobile home park owners to entice mobile home tenants into a mobile home park, have them make a substantial investment by purchasing from the mobile home park owner an expensive mobile home which is then irrevocably attached to the rented lot, and after so enticing the mobile home owners or tenants into the mobile home park exact a further and extraordinary and substantial price from them by simply announcing that the park is being converted from a rental mobile home park to a condominium thereby requiring the mobile home owners or tenants to pay substantial sums of money for their postage stamp sized lots. The entire tenure and thrust of Chapter 723, Fla. Stat., which is known as the Florida Mobile Home Owners Bills of Rights, *Lemon v. Aspen Emerald Lakes Associates*, 446 So.2d 177 (Fla. 4th DCA 1983) protects the mobile home owner or tenant from all types of abuses by the mobile home park owner. The Court finds that under certain sections of Chapter 723, Fla. Stat., the only entity who may convert an existing mobile home park to a condominium is the tenants themselves through a homeowners association which they create after the association pur-

chases the park from the mobile home park owner. Therefore, it is clear to the Court that the legislature of the State of Florida did not *intend* to permit mobile home park owners to exact substantial fees from mobile home owners or tenants by the conversion of mobile home parks to condominiums.

Initially, under Chapter 723.004(1), Fla. Stat., all matters concerning mobile home parks are to be regulated by the Mobile Home Act, and the legislature specifically preempts to the state all regulation and control of mobile home lot rents and all other matters and things related to the landlord/tenant relationship created in Florida's mobile home parks. This fact in and of itself clearly indicates that Florida's condominium statute, Chapter 718, Fla. Stat., is *not applicable* unless specifically invoked by the provisions of Chapter 723, Fla. Stat. No such provision appears within the confines of Chapter 723, Fla. Stat. To the contrary, the applicable statutes of Chapter 723, Fla. Stat., show that existing mobile home parks cannot be converted to condominiums by the park owners. Florida Statute 723.071, deals with the sale of mobile home parks by the mobile home park owners. Under this statute, the mobile home park owner, if he offers the mobile home park for sale, must notify the home owners association and offer to sell the mobile home park to the home owners association. The home owners association, as created under the Florida Mobile Home Act, has the right of first refusal to buy the entire park. Under the Condominium Act, Florida Statute 718.612, the residential tenant of an existing improvement has the right of first refusal to purchase the unit in which he resides. These provisions are clearly in conflict. Under the Mobile Home Act, the association has the exclusive right of first refusal of the entire park, while under the Condominium Act the individual tenant has the right of first refusal as to his individual unit.

Florida Statute 723.077, calls for the Articles of Incorporation of a home owners association to provide for the conversion of the mobile home park to a condominium or cooperative form of ownership *after* the home owners association purchases the park from the park owner. The home owners association is designated to be the entity that creates a condominium or offers condominium parcels for sale or lease under Section 723.077, Fla. Stat. Under this statute the home owners association can also choose other forms of ownership once the association purchases the park.

Therefore, Section 723.077, Fla. Stat., is expressly designed to allow the mobile home owners to choose the condominium form of ownership once the home owners association purchases the park. A condominium under this statute is created with the express authorization and

majority vote of the mobile home owners. In the case at bar, the park owners are attempting to force the mobile home owners to purchase their lots. This is not allowed under Section 723.077, Fla. Stat., since only the home owners association with the majority vote of the mobile home owners in the park can convert the mobile home park to a condominium. Therefore, the statutes involved clearly evidence the legislature's intent that mobile home park owners not be subjected to forced purchase of their lots by mobile home park owners who attempt to exact substantial sums of money for the individual lots in a mobile home park.

Most persuasive of all is Section 723.073, Fla. Stat., exempting the home owners association from the Roth Act, Sections 718.604 to 718.622, Fla. Stat. Unmistakably, this exemption only applies to the mobile home owners or tenants through their home owners association and no exemption to the Roth Act is provided for mobile home park owners. Therefore, there is a direct and unequivocal expression of intent on the park of the Florida legislature not to permit mobile home park owners to convert a mobile home rental park into a condominium form of ownership. The reasons for this are obvious as stated earlier in this Court's opinion. To permit such a conversion would simply grant to a mobile home park owner the right to exact substantial and large sums of money under duress from the mobile home owners or tenants of the park. Obviously, the legislature did not intend to permit mobile home park owners to take advantage of mobile home owners or tenants by threatening such conversions. This certainly would be in line with the Supreme Court's finding in *Palm Beach* and *Stewart, supra.*

In further analysis of Chapter 723, Fla. Stat., the Court notes that under Section 723.061, Fla. Stat., which governs the grounds for eviction of mobile home tenants, that the statute prohibits the eviction of a mobile home owner or tenant except upon certain specified grounds. Conversion to condominium is not listed among the grounds for eviction. If a mobile home park owner could convert to a condominium and give the mobile home owner or tenant an ultimatum to either purchase his lot or leave the mobile home park, surely this would be a form of eviction. Had the Florida legislature intended to grant to mobile home park owners the unfettered right to accomplish eviction in this manner, surely Section 723.061, Fla. Stat., would have granted such a right.

Additionally, the Court notes that once conversion to condominium takes place, even if the park owner still owns the individual lots, the park would not be subject to the provisions of the Florida Mobile Home Act. This means that once conversion has taken place, the park

owner can evict at will because the protective provisions in Section 723.061, Fla. Stat., do not apply. The Supreme Court in *Stewart v. Green, supra,* cautioned the Courts of Florida to be on the lookout for attempts by mobile home park owners to circumvent the protections provided by Florida's Mobile Home Act. (300 So. 2d 889 at 894). To rule otherwise in this case, and permit condominium conversion of mobile home parks would ignore such an admonition by Florida's Supreme Court.

Further, Section 718.104(1), Fla. Stat., limits condominiums to be created on land owned in fee simple or held under a lease of an unexpired term of at least fifty years. In this case, many of the tenants hold life-long leases for both the husband and the wife. Thus, it appears that the defendants at least as to those lifetime leases do not own the land in fee simple and hence condominiums cannot be created as to these lots.

Further, a condominium "unit" is defined in Section 718.103(23), Fla. Stat., as "part of the condominium property which is subject to exclusive ownership. A unit may be an improvement, land, or land and improvements together, as specified in the declaration." The term "land", as used in this definition is a statutory *term of art* also defined in the Condominium Act. Under Section 718.013(15), Fla. Stat., "land" as defined is used throughout the Condominium Act to permit individual ownership of individual parcels in a single building or structure. The term "land" is defined so as to allow individual ownership of units in a multiple unit structure while at the same time allowing the structure itself to be owned by the condominium association or developer. It is common condominium practice for the walls, ceilings and floors of a condominium to be comment elements within the "unit", with the owner actually owning only the air space within the individual unit. In this manner, the condominium association or developer remains responsible for the pipes, electrical wiring and other elements of the structure which are located in the space between individual condominium units in the multiple unit building. Thus, the definition of "land" envisions multiple ownership within a single structure and cannot remotely be said to apply to a mobile home park in which the only thing that is to be purchased or owned is the land underneath the mobile home which is already owned by the mobile home owner or tenant.

It is clear by reading Chapter 718, Fla. Stat., that the conversion of property into condominium is an entirely different concept than creating a condominium from empty property. Under Section 718.401, Fla. Stat., a developer can create a condominium by converting existing,

**100**

*previously occupied* improvements to the condominium form of ownership. This statute indicates the legislature's intent to allow a developer to convert current improvements *owned by the developer* into a condominium. This is not the case here parks because the existing previously occupied improvements are owned by the mobile home owners—not the developer.

Part VI of the Condominium Act governing conversion to condominium forms of ownership, which is known as the Roth Act, indicates that the legislature intended to *exclude* existing mobile home parks from the Act. Section 718.606, Fla. Stat., entitled "Conversion of Existing Improvements to Condominiums", provides for conversion of existing improvements only. In this case the mobile home owners and not the developer who is attempting the convert the property into the condominiums.

Perhaps the clearest example of the legislature's intent, is the provisions for Notice of Intended Conversion which must be delivered to tenants of existing improvements being converted to condominiums under the Roth Act. Florida Statute 718.608, creates a statutory notice which must be sent to all tenants of property being converted to condominium. This notice begins with the phrase "These *apartments* are being converted to condominium . . .". The use of the term "apartments" demonstrates the legislative intent of the Roth Act and the Condominium Act in general. Therefore, clearly the legislature did not contemplate conversion of existing mobile home rental parks into condominiums. Otherwise, the notice required to be sent by the developer who is converting existing units into condominium would not exclusively be directed to "apartments".

The Court notes that under the exhibits which were admitted into evidence at the injunction hearing, the same notice as required by the Roth Act was sent to the mobile home owners or tenants. The notice used the term "apartments" as required by the Act. Obviously, such a notice is factually defective since "apartments" were not being converted to condominium. Only the empty lots owned by the Defendants was being attempted to be converted into condominium. In sum, the provisions of Chapter 718, Fla. Stat., and particular Part VI of the Condominium Act known as the Roth Act, clearly indicate the legislative intent not to permit conversion of existing mobile home rental parks into condominiums by mobile home park owners.

In *Bennett v. Behring Corp*, 96 FRD 343 (S.D. Fla. 1982) the United States District Court for the Southern District of Florida held that single family detached dwellings were "by definition" excluded

**101**

from coverage of the state Condominium Act. In *Bennett* the Plaintiffs were residents of a subdivision consisting of single family homes. The subdivision included various social and recreational facilities for the use of the subdivision residents. The Plaintiffs were attacking the validity of the subdivision arrangement. In determining the validity of the land development scheme, the Court stated that the circumstances did not create a "condominium" case. The Court stated that "class members" are owners of single family detached dwellings and are thus, *by definition*, excluded from the coverage of the Florida condominium laws. (Emphasis supplied). Therefore, applying the *Bennett* decision to the facts in the case at bar, it is clear that individually owned and separate lots in a mobile home rental park are by definition excluded from coverage of Florida's condominium laws.

In the case of *County of LaSalle v. Grundy County National Bank*, 422 NE 2d 648 (Ill.App. 1981) an Illinois appellate Court ruled directly on the question as to whether or not a mobile home park is properly convertible to the condominium form of ownership. The *LaSalle* Court found that no such conversion was permissible with the Court agreeing with the trial Court's ruling that an attempt to convert a mobile home park into a condominium is "fanciful". The Court also notes that summary judgment was granted in the *LaSalle* case and affirmed. *See also Prestwick Land Owners Association v. Underhill*, 425 NE 2d 1191 (Ohio App. 1980); *United Masonary, Inc. v. Jefferson Meds, Inc.*, 237 SE 2d 171 (VA. 1977); *Burger Condominium, Shelter on a Statutory Foundation*, 63 Colum. L. Rev. 987, 989 (1962).

Both Chapter 723, Fla. Stat., and Chapter 718, Fla. Stat., must be construed as a whole. *Pinellas County v. Lake Padgett Pines*, 333 So. 2d 472 (Fla. 2d DCA 1976). When both Acts are construed as a whole and with the unquestionable preemption by the legislature to any other consideration other than Chapter 723, Fla. Stat., where mobile home parks are concerned, the Court finds that in order for Chapter 718, Fla. Stat., to even be applicable, there must be some provision contained in Chapter 723, Fla. Stat., permitting the conversion of existing mobile home parks into condominium. Since no provisions exists, and in light of the policy stated by Florida's Supreme Court in the *Palm Beach* and *Stewart* decisions, it is clear that the legislature and Courts of Florida specifically intend to protect mobile home owners or tenants from the abuses attempted by the Defendants in the case at bar. The protective devices provided and envisioned by most of the sections in Chapter 723, Fla. Stat., would thus be totally circumvented. The Court has found no case law or statutory provision which indicates any remote intent on the park of the legislature of the Court to remove the

protection afforded by Chapter 723, Fla. Stat., and to permit conversions of exiting mobile home parks into a condominium form of ownership. Only under Section 723.077, Fla. Stat., may a mobile home park be converted into a condominium form of ownership and then only by the tenants or mobile home owners themselves through their home owners association.

Therefore, the Court declares and finds, as a matter of law, the VILLAGE GREEN MOBILE HOME PARK and VILLAGE GREEN WEST MOBILE HOME PARK, may not be converted into a condominium type of ownership by the mobile home park owners. The Plaintiffs' Amended Motion for Summary Judgment as to Counts I is GRANTED.

In regard to Count III, for Injunctive Relief, the Affidavit filed by Robert Miller states that he is the Vice President and General Manager of the defendant partnerships and states there is not now nor are there any plans to convert or filings made toward conversion of the property known as VILLAGE GREEN MOBILE HOME PARK EAST or WEST. The Plaintiffs have failed to prove irreparable harm to grant a permanent injunction. No additional proof has been offered since the hearing for Temporary Injunction. The Fourth District Court of Appeal had previously reversed the trial Court's Temporary Injunction holding that plaintiffs have not met the requirements of *Contemporary Interiors v. Four Marks, Inc.*, 384 So. 2d 734 (Fla. 4th DCA 1980). Plaintiffs argue that the threat of another attempted conversion of the mobile home park into a condominium effects the value of the plaintiffs mobile homes, but there is no uncontroverted evidence to support this.

Therefore, plaintiffs Amended Motion for Summary Judgment as to Count III is DENIED.

The Plaintiffs' request for attorney's fees is DENIED.

DONE AND ORDERED at Vero Beach, Indian River County, Florida on this 1st day of August, 1986.