300 So.2d 881 (1974)
PALM BEACH MOBILE HOMES, INC., a Florida Corporation, and Dolan Corporation, a Florida Corporation, Appellants,
v.
Beatrice STRONG, Appellee.
No. 44179.
Supreme Court of Florida.
July 10, 1974.
*882 Theodore Babbitt of Phillips & Babbitt, West Palm Beach, for appellants.
Earl R. Boyce, Lake Worth, for appellee.
Jack M. Skelding, Jr. of Madigan, Parker, Gatlin, Truett & Swedmark, Tallahassee, for Florida Mobile Home and Recreational Vehicle Assn.
Malcolm Anderson, West Palm Beach, for Federation of Mobile Home Owners of Florida, Inc.
Robert L. Shevin, Atty. Gen. and William R. Hanley, Asst. Atty. Gen., for the State of Florida, as amicus curiae.
ROBERTS, Justice.
This cause is before us on direct appeal from a final judgment of the Circuit Court of Palm Beach County holding Sections 83.271, 83.281, and 83.291, Florida Statutes, to be constitutional, thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution, 1973, F.S.A.
Appellee, plaintiff below, filed a complaint and amended complaint for declaratory relief against appellants alleging that in April, 1971, she purchased a trailer from appellant Dolan Corporation; that the appellants agreed to rent her a lot at Palm Beach Mobile Homes for the annual sum of $600 and that she paid them the first year's rent; that on March 8, 1972, Sections 83.271, 83.281, and 83.291, Florida Statutes, relating to mobile homes became effective; that in April, 1972, she tendered a cashier's check in the amount of $600 to appellants and that they returned and refused the same; that she is unsure as to her rights under the new legislation and due to threats by appellants as to future action, she seeks a determination of her rights and construction of the new legislation relative to her relationship with appellants. She further alleged that appellants have continuously harassed and annoyed her, have caused her grievous anguish, pain and suffering, and have given her no legal reason to either evict her or refuse payment for annual rental. In a second count to the complaint, appellee sought damages in excess of $2,500 for alleged injury, loss of reputation and medical expenses. Appellants answered setting forth an affirmative defense that the plaintiff had violated the rules and regulations of the park and also alleging that the statute in question was unconstitutional as sought to be applied and appellants counter claimed alleging their right to refuse to renew the original oral lease when it expired on April 22, 1972, and praying for a judgment of eviction in accordance with Section 83.06, Florida Statutes, F.S.A. Appellee denied each and every allegation of the counter claim.
Upon motion of appellants, the trial court dismissed Count II of the complaint.
The case was tried before the court without a jury, and final judgment was entered *883 on July 6, 1973, in favor of appellee on both her complaint and the appellants' counter claim. The trial court held that Sections 83.271, 83.281, and 83.291, Florida Statutes, are constitutional and in effect at all times concerning this action, ordered that appellee is entitled to rent or lease the premises without interference or harassment from appellants and found that appellee had not violated any federal, state or local laws or park regulations and that she shall be allowed to peaceful possession of the premises as long as reasonable.
Although the trial court upheld the constitutionality of Sections 83.271, 83.281, and 83.291, Florida Statutes, the determinative issue in this cause is the construction, application and constitutionality of Section 83.271, Florida Statutes, adopted by the Legislature in the 1972 legislative session as Chapter 72-28, Laws of Florida, which became effective March 8, 1972, which act pertains to evictions from mobile home parks. The remaining statutory provisions ruled on by the trial court were not material to the instant cause nor was such determination required for the disposition of this litigation. Therefore, the constitutionality vel non thereof will not be passed upon in the present cause by this Court since this Court has previously held that it is a fundamental principle that courts will not pass upon the validity of a statute or even a part of an act in a proceeding which does not involve the act or wherein the case may be disposed of upon any other ground. Williston Highlands Development Corp., et al. v. Hogue, et al., 277 So.2d 260 (Fla. 1973); De Jong v. Pallotto, 239 So.2d 252 (Fla. 1970); Mounier v. State, 178 So.2d 714 (Fla. 1965); Lainhart v. Catts, et al., 73 Fla. 735, 75 So. 47 (1917). Specifically, this Court explicated in P.C. Lissenden Co. v. Board of County Commissioners, 116 So.2d 632 (Fla. 1959):
"[W]hile the validity of this statute was raised by the appellant and actually passed upon by the trial court, it was not only determinative of the issues or essential to the disposition thereof, but such question was wholly immaterial to the determination of the merits of the action. Therefore that portion of the judgment appealed which purports to pass upon the validity of the cited statute is obiter dictum and is hereby held for naught."
The only issue argued sub judice by counsel for the parties is the constitutionality vel non of Section 83.271, Florida Statutes, and the appropriate construction to be given thereto.
This statute provides:
"83.271 Mobile home parks; eviction, grounds, proceedings. 
(1) A mobile home park owner or operator may not evict a mobile home dweller other than for the following reasons:
(a) Nonpayment of rent.
(b) Violation of some federal, state or local ordinance which may be deemed detrimental to the safety and welfare of other dwellers in the mobile home park.
(c) Violation of any rule or regulation established by the park owner or operator, provided the mobile home owner received written notice of said violation at least thirty days prior to the date he is required to vacate. A copy of all rules and regulations shall be delivered by the park owner or operator to the mobile home owner prior to his signing the lease or entering into a rental agreement. A copy of the rules and regulations also shall be posted in the recreation hall, if any, or some other conspicuous place in the park.
(2) Cumulative eviction proceedings may be established in a written lease agreement between the park owner or operator and a mobile home dweller in addition to those established by law.
(3) This section shall not preclude summary eviction proceedings, and if the park operator or owner does not have *884 one of the above grounds available, the park tenant may raise the same by affirmative defense."
The authority of the state through the Legislature to impose reasonable regulations upon mobile homes and mobile home parks is unquestionable under its broad police power in view of the fact that this enterprise peculiarly affects the public interest and bears a substantial relation to the public health, safety, morals, and general welfare. Egan v. City of Miami, et al., 130 Fla. 465, 178 So. 132 (1938); 54 Am.Jur.2d Mobile Homes, § 5; 22 A.L.R.2d 774; Hodes and Roberson, The Law of Mobile Homes 2nd Ed.; "Regulation of Mobile Homes," 13 Syracuse Law Review 125. The right to contract and to use one's property as one wills are fundamental rights guaranteed by the constitution of the United States and the constitution of Florida; however, this Court has ofttimes declared that the degree of such guaranties must be determined in the light of social and economic conditions which prevail at a given time. In Robinson v. Florida Dry Cleaning & Laundry Board, 141 Fla. 899, 194 So. 269 (1940), this Court quoting with emphasis from Miami Laundry Co. v. Florida Dry Cleaning and Laundry Board, 134 Fla. 1, 183 So. 759 (1938), 119 A.L.R. 956, said:
"Liberty of contract and the right to use one's property as he wills are fundamental constitutional guaranties, but the degree of such guaranties must be determined in the light of social and economic conditions that prevail at the time the guaranty is proposed to be exercised rather than at the time the Constitution was approved securing it; otherwise the power of the legislature becomes static and helpless to regulate and extend them to new conditions that constantly arise.
"Constitutional guaranties have never been thought to be immune from regulation or limitation in the interest of the common good. When limited, the process has been evoluntary rather than spontaneous. Regulation might be appropriately denied today that could be just as appropriately granted tomorrow. When the exercise of a constitutional guaranty is limited to such a small sector of the population that the rights of the public will be protected by unrestricted competition, the legislature will not generally attempt to regulate, but when large numbers became involved, many of whom are unequal in the race, and their economic security becomes imperiled through the exercise of what may appear to be the constitutional right of another, then the legislature has not hesitated to step in and regulate."
Freedom to contract and a citizen's right to pursue a lawful business which are valuable property rights are subject to reasonable restraint in the interest of the public welfare. The right to contract is the general rule and restraint of this right by the police power is the exception to be exercised when necessary to secure the comfort, health, welfare, safety and prosperity of the people. Adams v. Miami Beach Hotel Assoc., 77 So.2d 465 (Fla. 1955); Miami Shores Village v. Wm. N. Brockway Post No. 124 of American Legion, 156 Fla. 673, 24 So.2d 33 (Fla. 1945); Eccles v. Stone, 134 Fla. 113, 183 So. 628 (Fla. 1938); State ex rel. Fulton v. Ives, et al., 123 Fla. 401, 167 So. 394 (Fla. 1936); Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780. The Supreme Court of the United States in Atlantic Coastline Railroad Company v. City of Goldsboro, North Carolina, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914), succinctly explained the scope of the power of the state to secure health, safety, good order, comfort and general welfare of the state, as follows:
"For it is settled that neither the `contract' clause nor the `due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated *885 nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. Slaughter-House Cases, 16 Wall. 36, 21 L.Ed. 394, 404; Munn v. Illinois, 94 U.S. 113, 125, 24 L.Ed. 77, 84; Beer Co. v. Massachusetts, 97 U.S. 25, 33, 24 L.Ed. 989, 992; Mugler v. Kansas, 123 U.S. 623, 665, 8 S.Ct. 273, 31 L.Ed. 205, 211; Crowley v. Christensen, 137 U.S. 86, 89, 11 S.Ct. 13, 34 L.Ed. 620, 621; New York &c. R.R. Co. v. Bristol, 151 U.S. 556, 567, 14 S.Ct. 437, 38 L.Ed. 269, 272; Texas &c. R.R. Co. v. Miller, 221 U.S. 408, 414, 415, 31 S.Ct. 534, 55 L.Ed. 789, 795, 796. And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law. Chicago, Burlington &c. Railroad v. Chicago, 166 U.S. 226, 255, 17 S.Ct. 581, 41 L.Ed. 979, 991; New Orleans Gas Co. v. Drainage Commissioners, 197 U.S. 453, 462, 25 S.Ct. 471, 49 L.Ed. 831, 835; C., B. & Q. Ry. v. Drainage Commissioners, 200 U.S. 561, 591, 592, 26 S.Ct. 341, 50 L.Ed. 596, 608, 609.
"Of course, if it appear that the regulation under criticism is not in any way designed to promote the health, comfort, safety, or welfare of the community, or that the means employed have no real and substantial relation to the avowed or ostensible purpose, or that there is wanton or arbitrary interference with private rights, the question arises whether the law-making body has exceeded the legitimate bounds of the police power."
The question posited by appellants sub judice is if the trial court appropriately construed Section 83.271, Florida Statutes, then whether such statute constitutes an arbitrary and unreasonable regulation by the state constituting a deprivation of property rights without due process, impairment of contractual obligation, and a violation of the equal protection clause of the Constitution of Florida. It is generally accepted that the state is the primary judge of, and may by statute or other appropriate means, regulate any enterprise, trade, occupation or profession if necessary to protect the public health, welfare or morals. McInerney v. Ervin, 46 So.2d 458 (Fla. 1950). Legislative action exercised under the state's police power is valid if such exercise is confined to those acts which may reasonably be construed as expedient at least for the protection of public safety, public welfare, public morals or public health. Sweat v. Turpentine & Rosin Factors, Inc., 112 Fla. 428, 150 So. 617, 618 (1933); Eelbeck Milling Company v. Mayo, 86 So.2d 438, 439 (Fla. 1956); Larson v. Lesser, 106 So.2d 188 (Fla. 1958); Zabel v. Pinellas County Water and Navigation Control Authority, 171 So.2d 376 (Fla. 1965); Newman v. Carson, 280 So.2d 426 (Fla. 1973).
We recognize the liberty and property right that every owner of a mobile home and every owner or operator of a mobile home park possesses to use his property in his own way and for his own purposes subject only to the restraint necessary to secure the public welfare. However, we find that Section 83.271, Florida Statutes, constitutes a reasonable and necessary regulation of that right in view of the peculiar nature and problems presented by mobile homes. Hodes and Roberson in their treatise on The Law of Mobile Homes, 2d Ed., stated:
"The mobile home presents problems that are new and different from those with which the law-making authorities are accustomed in their long experience with stationary homes. The policy and objectives of the law are unchanged, but attempts to accomplish these objectives by following too rigidly the patterns of earlier thinking in the field of home and housing regulation have created unnecessary hardships. The law is not static. It has ample resources to meet every *886 new development and to regulate it for the common good, which includes benefits for those who are directly subject to the regulation as well as for the rest of the community. In the mobile home field, the need is for specific legislation which recognizes the mobile home as a unique but permanent type of housing and provides standards which are consistent with its particular nature."
Mobile homes come to rest in established parks, the wheels are generally removed, they are anchored to the ground, because of forces of the wind, connections with electricity, water and sewerage are made, awnings are frequently attached, and to a large degree they lose their mobility except, unless, and until the wheels are restored, disruption of electrical, water and sewer connections is had and a certain amount of dismantling and crating is had, all at a substantial expense of the owner of the mobile home who had bought such home with the expectation of being able to remain in the park for a not unreasonable time so long as he abides by all the reasonable regulations established by the park owner. The removal from one park to another becomes more than a mere hitching to a truck or tractor and pulling it away. To a large degree, mobile homes are occupied by people in the lower income brackets who cannot spend several hundred dollars at the mere whim of a lessor park. The classification of mobile home park owners as distinguished from other landlords is reasonable and practical. There is a just, fair, and practical basis for the classification and it is based on a real difference which reasonably relates to the subject and purpose of the regulation. Finlayson v. Conner, 167 So.2d 569 (Fla. 1964); State v. White, 194 So.2d 601 (Fla. 1967); Newman v. Carson, supra; Stewart v. Green, et al., Fla., 300 So.2d 889, opinion filed ____.
In Stewart v. Green, supra, which upholds the constitutionality of amended Section 83.271, Florida Statutes, Chapter 73-182, Laws of Florida, now number Section 83.69, Florida Statutes (1973), F.S.A., Justice Ervin clearly and succinctly explains the need for and reasonableness of the questioned legislation in view of the peculiar problems confronting mobile home owners. Therein he states:
"As documented by the 1970 report of Professor Cubberly for the State Department of Community Affairs, and reaffirmed by the Governor's 1974 Mobile Home Task Force, we note that most people who live in mobile homes usually spend several thousands of dollars to purchase a home, usually from a mobile home park owner or an associated dealer. Most mobile home owners find they must also rent the lot on which their mobile home is to be placed from their mobile home dealer or his associate. In most instances they become month-to-month tenants, subject to being evicted on fifteen days' notice, although their `home,' with its wheels and hitch removed, appears to have permanence of location, being tied down on the lot as state law requires and being undergirded with a poured cement base. A great catch in the eviction removal process, as the Governor's Task Force noticed, is that often under modern conditions there is no ready place for an evicted mobile home home owner to go due to a shortage of mobile home spaces in many areas of the state.
"There has developed because of space shortage what is known as the `closed Park,' from whose owners a prospective tenant must either buy a new mobile home in order to get in, although he may already own his `used' or `removed' home from a park from which he had to move; or the park owner may accept the `used' or `removed' home in his park only upon payment of a high entrance fee."
We agree with the trial court's application and construction of Section 83.271 (now Section 83.69) which is in accordance with Stewart, supra. This legislation was enacted to provide mobile home owners with security in dealings with mobile home park owners and at the same *887 time impose the least restrictions on the landlord. By enactment of Section 83.271, Florida Statutes, no impairment of contract rights has occurred since the contract clause must be construed in harmony with the reserved power to safeguard the vital interests of the people. Relative to the concept of impairment of contractual obligations, this Court explicated in Mahood v. Bessemer Prop., Inc., 154 Fla. 710, 18 So.2d 775 (Fla. 1944):
"In determining whether legislation violates the contract clause, the question is not whether the legislation affects contracts incidentally, directly or indirectly, but whether it is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. See Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. The contract clause does not restrict the power on the theory that such power cannot be contracted or bartered away. See Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721.
"The remedial law in force at the time the contract is made enters into and becomes a part thereof, but the parties to the contract have no vested right under the contract clause of the Federal Constitution, in the particular remedy or modes of procedure then existing. It may be assumed that the parties made their contract with knowledge of the power of the State to change the remedy or method of enforcing the contract, which may be done by a State without impairing contract obligations. See Pittsburg Steel Co. v. Baltimore Equitable Society, 226 U.S. 455, 33 S.Ct. 167, 57 L.Ed. 297. A State may by legislative enactment modify existing remedies and substitute others without impairing the obligation of contracts, provided a sufficient remedy be left or another sufficient remedy be provided. See Waggoner v. Flack, 188 U.S. 595, 23 S.Ct. 345, 47 L.Ed. 609."
See also: Hillsborough County v. Bregenzer, et al., 151 Fla. 747, 10 So.2d 498 (1942); Shavers v. Duval County, 73 So.2d 684 (Fla. 1954); State ex rel. Fulton v. Ives, supra.
Although we find that Section 83.271, Florida Statutes, is constitutionally valid, we are fully cognizant that a contention might be made that the act is invalid because it would have the effect of permanently depriving the owner of the land upon which a mobile home park is located for all times of the management in the use of his land for other purposes than a mobile home park. This would ordinarily raise serious doubts as to the constitutionality vel non of the act; however, that question has become moot in that the 1973 Legislature has cured the defects by enacting into law the following:
"(d) Change in use of land comprising the mobile home park or a portion thereof on which a mobile home to be evicted is located from mobile home lot rentals to some other use, provided all tenants affected are given at least ninety (90) days' notice, or longer if provided for in a valid lease, of the projected change of use and of their need to secure other accommodations."[1]
*888 Sub judice, this question of changing the use of the property was not involved and the foregoing statement is by way of caveat.
Furthermore, relative to the question of deprivation of property rights of mobile home park owners, we note that this Court has the duty if reasonably possible and consistent with constitutional rights to resolve all doubts as to the validity of a statute in favor of its constitutionality and if possible a statute should be construed as not to conflict with the constitution. The legislature has specifically recognized the right of the mobile home park owner or operator to establish and publish reasonable rules and regulations relating to tenants in the park. Recognizing the perpetual occupancy rights on another's property cannot, consistent with the constitution, be granted by law, we must construe the act in such a manner as to preserve its purpose while operating within the framework of the Constitution of Florida and of the Constitution of the United States. We, therefore, find that is is not inconceivable that one rule adopted by a mobile home park owner be that the landlord can terminate the tenancy after substantial duration and a park rule to that effect would be consistent with the remedies sought to be accomplished by the legislature provided that the notice time was for a reasonable period, and we cannot say that a rule requiring vacancy on at least twelve months' or more notice would be unreasonable. Anything less than twelve months would be unreasonable. The abbreviation of the tenancy must be consistent with the total circumstances and not inconsistent with the existing evils recognized by the legislature nor the remedies sought to be accomplished.
We are not unmindful of Subsection (2) of Section 83.271 (now (2) of 83.69) which provides:
"Cumulative eviction proceedings may be established in a written lease agreement between the park owner or operator and a mobile home dweller in addition to those established by law. (emphasis supplied)
However, it must be remembered that any such lease is made in contemplation of and subject to the limiting provisions of the statute.[2]
Accordingly, we hold that Section 83.271, Florida Statutes, is constitutional and that the trial court properly applied it to the instant cause. The final judgment of the trial court is, therefore, affirmed.
It is so ordered.
BOYD, McCAIN and OVERTON, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion in which ADKINS, C.J., concurs.
DEKLE, J., dissents.
ERVIN, Justice (concurring in part and dissenting in part):
Insofar as the majority concludes that a mobile home park owner can by a unilateral *889 regulation terminate a tenancy at the end of a year, it is pure obiter dictum and directly contrary to the intent of F.S. Section 83.69, F.S.A. My opinion in Stewart v. Green, Case No. 44,832, filed July 10, 1974, follows the plain language of Section 83.69 that a mobile home park tenancy is not to be terminated at the end of any agreed term, whether month-to-month or a year or longer, by any unilateral notice or eviction proceedings of the landlord so long as the agreed or reasonably adjusted rent is paid. The regulations prescribed unilaterally by the mobile home park landlord cannot provide for lease eviction termination on the sole basis of a year's tenancy contrary to Section 83.69, although the landlord and tenant may mutually agree to a terminable one-year lease prior to the inception of the tenancy.
Except as indicated above, I agree with the majority opinion.
ADKINS, C.J., concurs.
NOTES
[1] It should be noted that other revisions to Section 83.271 (renumbered in the 1973 Statutes as 83.69) were made by the Legislature. Section 83.69 now reads as follows:

(1) A mobile home park owner or operator may not evict a mobile home or a mobile home dweller other than for the following reasons:
(a) Nonpayment of rent.
(b) Conviction of a violation of some federal or state law or local ordinance, which [violation] may be deemed detrimental to the health, safety, [or] and welfare of other dwellers in the mobile home park.
(c) Violation of any reasonable rule or regulation established by the park owner or operator, provided the mobile home owner received written notice of the grounds upon which he is to be evicted at least thirty days prior to the date he is required to vacate. A copy of all rules and regulations shall be delivered by the park owner or operator to the mobile home owner prior to his signing the lease or entering into a rental agreement. A copy of the rules and regulations shall also be posted in the recreation hall, if any, or some other conspicuous place in the park. A mobile home park rule or regulation shall be presumed to be reasonable if it is similar to rules and regulations customarily established in other mobile home parks located in this state or if the rule or regulation is not immoderate or excessive.
[(d) above stated]
(2) Cumulative eviction proceedings may be established in a written lease agreement between the park owner or operator and a mobile home dweller in addition to those established by law.
(3) This section shall not preclude summary eviction proceedings, and if the park operator or owner does not have one of the above grounds available, the park tenant may raise the same by affirmative defense.
[2] We also note that the 1974 Legislature enacted Section 83.695 dealing with mobile home leases which upon becoming effective January 1, 1975, will bear directly on the rights of lessors and lessees of mobile home parks.