635 So.2d 61 (1994)
ASPEN-TARPON SPRINGS LIMITED PARTNERSHIP, etc., et al., Appellants,
v.
George STUART, etc., et al., Appellees.
No. 92-2814.
District Court of Appeal of Florida, First District.
January 18, 1994.
*62 Marguerite H. Davis, Daniel C. Brown, and Paul R. Ezatoff, of Katz, Kutter, Haigler, Alderman, Davis & Marks, Tallahassee, for appellants/cross-appellees.
Thomas A. Bell, E. Harper Field, and Tracy P. Moye, for Florida Dept. of Business and Professional Regulation, Tallahassee, appellees/cross-appellants.
Peter M. Dunbar and Robert S. Cohen, of Haben, Culpepper, Dunbar & French, Tallahassee, for Federation of Mobile Home Owners of Florida, Inc., appellee/cross-appellant.
David D. Eastman and Jack M. Skelding, Jr., of Parker, Skelding, Labasky & Corry, Tallahassee, for Florida Manufactured Housing Ass'n, Inc., amicus curiae.
BARFIELD, Judge.
This appeal involves challenges to a final judgment determining the constitutionality of two provisions of "The Florida Mobile Home Act," section 723.033, Florida Statutes (Supp. 1990), and section 723.061(2), Florida Statutes (1989). The trial court found section 723.033 constitutional and section 723.061(2) unconstitutional, and denied the mobile home park owners' request for attorney fees under 42 U.S.C. § 1988. We affirm each of these determinations.
In November 1990, several mobile home park owners filed a complaint against the Secretary of the Department of Business Regulation, the Director of its Division of Florida Land Sales, Condominiums and Mobile Homes, and the Chief of its Bureau of Mobile Homes (collectively, DBR[1]). They sought a declaratory judgment that the above-mentioned provisions of chapter 723 were unconstitutional, as well as injunctive and declaratory relief under 42 U.S.C. § 1983 and attorney fees under 42 U.S.C. § 1988. The Federation of Mobile Home Owners of Florida, Inc. (FMO), representing mobile home owners and tenants, was allowed to intervene as a party defendant.
Chapter 723 applies to tenancies in mobile home parks offering at least ten lots for rent, *63 where only the lots are leased by the mobile home owners. Section 723.033 authorizes relief when the court finds "a mobile home lot rental amount, rent increase, or change, or any provision of the rental agreement, to be unreasonable." Subsection (3) provides that "a lot rental amount that is in excess of market rent shall be considered unreasonable." The park owners claimed that section 723.033 contains no meaningful guidance for determining whether a rental amount is reasonable; that it establishes statewide rent controls of unlimited duration; that it grants the tenant, but not the park owner, the right to unilaterally set aside any allegedly "unreasonable" term of the rental agreement; and that subsection (3) establishes an irrebuttable and conclusive presumption.
Section 723.061(2) requires a mobile home park owner who wishes to change his land use either to pay to have the tenants moved to another comparable park within fifty miles, or to purchase the mobile homes and appurtenances from the tenants at a statutorily determined value. The park owners claimed that this section requires them to hold their property out for rent in perpetuity; that it transfers a possessory interest in their land to tenants, requiring them, in order to change the use of their land, to pay their tenants a "ransom" which includes part of the value of the land; that it violates due process guarantees of both the Florida and the federal constitutions; and that it constitutes a taking of their property without compensation, in violation of both constitutions.
The answers filed by DBR and FMO asserted that section 723.033 "provides ample and adequate guidance for Courts to resolve issues about the lot rental amounts charged by mobile home park owners" and that the statute does not "unconstitutionally abridge Plaintiff's rights to be rewarded for their industry, to engage in lawful business, or to rely on their contracts." They asserted that section 723.061(2) does not create an unconstitutional taking of park owners' land, and that it fully complies with both constitutions.
In support of their claims, the park owners presented the expert witness testimony of a statistician and finance professor, a property appraiser, and an economist and professor of real estate valuation. They also presented the testimony of two mobile home park managers. DBR and FMO presented no witnesses.
The trial court ruled that section 723.033 is constitutional. Noting the "economically unbalanced bargaining position" of tenants once they have moved into a mobile home park and the "extraordinary economic expense of moving [the mobile home] elsewhere," the court found that the challenged regulation prohibiting unreasonable rent increases "is rationally related to and substantially accomplishes the legitimate state objective of balancing the interests of mobile home owners (tenants) and park owners in the context of the permanent, unique, and hybrid economic relationship between the regulated parties," citing Stewart v. Green, 300 So.2d 889 (Fla. 1974), and Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974). The court found that the park owners' constitutional rights to be rewarded for their industry "are not so affected by the regulation of rents, in these unique circumstances, as to require the striking down of this form of legislation" and that "[t]he constitution cannot be raised as a bar to a regulation limiting rents or rental increases to a reasonable amount when the other party to the bargain does not stand on even remotely equal footing." It found that section 723.033 "contains sufficient standards to guide trial courts in the exercise of their duties under the statute" and did not violate the Florida Constitution.
Observing that it was "obliged to construe the statute in a manner so as to avoid a constitutional defect, if a reasonable construction may be given it in order to achieve that result," the court read sections 723.033(3)-(5) in pari materia with section 723.033(6) and rejected the park owners' "conclusive presumption" argument. It found that the statute "allows the park owner to show, by evidence pertaining to matters referenced in subsection (6)," that a rent "in excess of market rent" is not unreasonable. It ruled that "shall" in subsection (3) "should reasonably be interpreted by a trial court as directory, rather than as mandatory and conclusive."
*64 The trial court ruled that subsection 723.061(2) is unconstitutional, severed it from the rest of section 723.061, and enjoined DBR and FMO from enforcing it, finding that the challenged subsection is "arbitrary and capricious." Noting the other protections afforded mobile home owners by chapter 723, the court observed that the effect of subsection 723.061(2) "is not to make reasonable accommodation for competing interests, but to require the park owner to virtually guarantee a perpetual tenancy to a tenant in a regulated park in Florida," and that the unrebutted evidence of the subsection's practical operation and effect "only serves to underscore and buttress that which is apparent from the face of the statute."
The trial court noted the evidence that the supply of vacant lots in comparable parks is generally inadequate, that it costs $10,000 on average to move a single-wide mobile home, and that it would cost the park owner 25%-1434% of the land's value to move the tenants to another location. It observed that the alternative "buy out" under the statute would include to some extent "that portion of the market value of the mobile home which is contributed, not by the mobile home owner, but by the location of the park land and the types of amenities offered by the park owner," and that it would cost the park owner 32%-1174% of the land's value to purchase all the mobile homes and appurtenances.
The court found that section 723.061(2) constitutes both a physical taking and a regulatory taking of the park owner's property which does not substantially advance a public purpose, in violation of the Florida and federal constitutions. It noted that under the challenged subsection, "the only means within the park owner's control to terminate the lessee's occupancy of a park owner's land is by purchasing or moving all the affected homes" at its own expense, and that the lessees already have the statutory right to purchase the land if the park owner wishes to change the land use. The court found that section 723.061(2), "on its face, compels a park owner to suffer possession, occupancy, and perpetual tenancy of his land by others until he complies with an economically impossible requirement to purchase or move property that he does not own," and that the statute's "intent and effect is to coerce the landowner to surrender indefinitely his right to possess and occupy his land and to exclude others, and to do so for the exclusive benefit of a limited class who are lessees, not owners, of his land and who have chosen not to become owners of his land."
The court found that the state defendants "have the duty and authority to enforce section 723.061, Florida Statutes," but declined to assess attorney fees against them, finding that "Plaintiffs have not proved any activity of any of the Defendants that would give rise to any liability under Count VI of Plaintiff's complaint concerning 42 U.S.C. § 1983."
The park owners appealed the finding that section 723.033 is constitutional; DBR and FMO cross-appealed the finding that section 723.061(2) is unconstitutional. Florida Manufactured Housing Association, Inc. (FMHA) was allowed to appear as amicus curiae on the side of the park owners on the issue of the constitutionality of section 732.033.
This is not the first time that DBR and mobile home park owners have opposed each other. In Department of Business Regulation v. National Manufactured Housing Federation, Inc., 370 So.2d 1132, 1136-37 (Fla. 1979), the supreme court found chapter 77-49, Laws of Florida, a regulation of "unconscionable" rental increases in mobile home parks, to be unconstitutional because it unlawfully delegated legislative authority to an administrative body without meaningful guidance and because it "exceeds the authority ordinarily granted by rent control legislation" and therefore deprived park owners of property without due process. The court, however, acknowledged the state's "permissible interest in ameliorating the scourge of exorbitant rentals caused by housing shortages" and its authority "under its police power to impose reasonable regulations upon mobile homes and mobile home parks," citing Palm Beach Mobile Homes, Inc. v. Strong. Id at 1137.
The park owners contend that the trial court erred in refusing to adhere to the precedent set in National Manufactured Housing, which they assert is directly on point and dispositive of the issue of the constitutionality *65 of section 723.033. They argue that, like the 1977 attempt at rent control, the challenged statute is of unlimited duration, was enacted without a housing emergency which would justify such drastic regulation, contains an open-ended set of vague standards for determining whether a rent increase is "unreasonable," and unlawfully delegates legislative authority. They assert that section 723.033 is facially unconstitutional and that "all of the lower court's stated grounds for its decision were grounds which the Supreme Court in National Manufactured Housing considered and rejected as insufficient to save the practically identical 1977 law."
DBR argues that the state of the law has evolved since 1979 and that under current standards, rent control is constitutional unless it is arbitrary, discriminatory, or demonstrably irrelevant to the legislature's policy. It contends that the trial court correctly recognized the legislative purpose behind section 723.033 and properly upheld the statute, which contains the additional factors included in 723.033(6) for determining the "reasonableness" of rent increases. It asserts that section 723.033 differs from the statute stricken in National Manufactured Housing in several respects, including the fact that the determination of reasonableness in the challenged statute is to be made by the circuit court, "for whom determinations of reasonableness are a near daily event," whereas the 1977 statute delegated that responsibility to a state commission, which was "not otherwise engaged in determinations of reasonableness." It notes that both the United States Supreme Court and the Florida Supreme Court have upheld statutes which use the term "reasonable" as the yardstick, citing Stewart and Strong (both of which examined the predecessor to chapter 723); Federal Communications Commission v. Florida Power Corp., 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987) (involving the determination of "just and reasonable" rates for use of utility poles by cable systems); and Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (involving a determination of whether rent increases were "reasonable under the circumstances").
The park owners reply that section 723.033(6) "provides absolutely no guidance" as to the relative weight to be accorded any factor used in determining the reasonableness of rent increases, and that it delegates to the courts the "unbridled discretion to consider any conceivable, yet unspecified, factors in making that determination." They argue that the statute "is so vague, and its impact on basic rights is so severe, that its lack of intelligible standards wholly supports a ruling that this section unconstitutionally delegates legislative authority." They contend that because the statute "does not clearly circumscribe the court's review authority," it is unconstitutional for the reasons set forth in National Manufactured Housing "because it delegates to the courts the power to determine what the law shall be." They rely on Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974), in which the court held the term "unreasonable" insufficient to guide any court in interpreting the statute there under scrutiny. They argue that the meaning of the term "reasonable" varies with the issues involved, and that it is the inability to know what the legislature meant by the term in this context which "dooms this statute," not the fact that it has no meaning in any context.
The park owners argue that whatever the present state of federal constitutional law, National Manufactured Housing controls the issue of constitutionality under the Florida Constitution, and that none of the federal cases cited by DBR offers a basis for departing from the holding and rationale in that case as to the invalidity of open-ended rent control laws. They assert that DBR quoted dicta from Pennell out of context and that this dicta did not change the existing standards, or alternatively, that Pennell is distinguishable because it did not decide the constitutionality of rent control per se. They assert that the mobile home owner is now adequately protected by the regulatory structure of chapter 723, and may freely choose, without duress, whether to enter into an agreement providing for specified rent amounts and the factors bearing upon future rent increases.
*66 DBR and FMO contend that the trial court ignored precedent and the lack of evidence in striking section 723.061(2) as unconstitutional. They assert that the pleadings, which indicated only a facial challenge, and the facts in evidence, which did not include specific evidence as to the plaintiffs' parks, do not support its finding that the statute is unconstitutional as applied. They argue that in Yee v. City of Escondido, Cal., ___ U.S. ___, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), which they assert involved a regulatory framework very similar to Florida's,[2] the Supreme Court reaffirmed that an invitation by the landlord in a mobile home tenancy negates any claim of physical taking. They assert that nothing in the challenged statute requires a different result here. They contend that the park owners have failed to establish that the challenged statute constitutes a violation of substantive due process, i.e., that section 723.061(2) bears no substantial relationship to the general welfare, or that the statute constitutes a regulatory taking, i.e., that the regulation deprives the park owners of any economically viable use of their property.
The park owners assert that the trial court correctly found section 723.061(2) to be unconstitutional. Citing New York and United States Supreme Court decisions,[3] they contend that the statute authorizes an unconstitutional physical taking of their property without compensation. They argue that, because the cost to buy or move the mobile homes approaches or exceeds the value of the land, under this statute a park owner has no real option to change the use of his land and is effectively required to suffer a physical occupation of his property in perpetuity. They assert that the statute also constitutes a regulatory taking, because it deprives park owners of the right to possess and use their property, a fundamental and central right of property ownership. They contend that the "buy-out-or move" provision fails to advance any legitimate public purpose and serves only a private purpose, indemnifying mobile home owners for costs they might incur as a natural result of having chosen to lease a lot in a mobile home park instead of buying their own land. They argue that Glendale Federal Savings & Loan Association v. Department of Insurance, 485 So.2d 1321 (Fla. 1st DCA), rev. denied, Department of Insurance v. Glendale Federal Savings & Loan Association, 494 So.2d 1150 (Fla. 1986), required a factual record to support a facial due process challenge to the statute challenged in that case, because it involved issues of mixed fact and law, and that the trial court in this case properly considered the irrational and confiscatory impact of section 723.061(2).
DBR and FMO reply that the trial judge confused the constitutional "taking" standards, and found a "physical taking" after applying the "regulatory taking" standard, directly contrary to the precedent set in Yee and Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 *67 L.Ed.2d 868 (1982). They assert that the statute challenged in Seawall Associates v. City of New York, 74 N.Y.2d 92, 544 N.Y.S.2d 542, 542 N.E.2d 1059, cert. denied, City of New York v. Seawall Associates, 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 (1989), cited by the park owners, differs substantially from section 723.061(2). They note that the court in that case distinguished its holding from Loab Estates, Inc. v. Druhe, 300 N.Y. 176, 90 N.E.2d 25 (1949), in which the court had upheld a statute which prohibited a landlord from evicting tenants "for the purpose of withdrawing accommodations permanently from the rental market" unless provision was made for relocating the tenants in comparable quarters at rents no greater than they had paid. They argue that the trial court erred in finding a regulatory taking, because section 723.061(2) serves a legitimate public purpose in regulating the unique relationship between a landowner and mobile home tenant, and because the park owners retain an economically viable use of their land under the statute.
The park owners assert that the trial court's rulings, that section 723.061(2) violated the constitutional provisions they presented, that it violated the Fourteenth Amendment to the United States Constitution, and that DBR had the duty and power to enforce it, establish a violation of 42 U.S.C. § 1983. They argue that they were therefore entitled, as a matter of law, to attorney fees under 42 U.S.C. § 1988, citing Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).
DBR points out that 42 U.S.C. § 1988 provides that in an action to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis supplied). It argues that an award of attorney fees in a civil rights action is not an absolute right, and that the park owners have not shown that the trial court abused its discretion in finding that no conduct of the individual defendants was proved which would warrant assessment of attorney fees.[4]
The park owners reply that the federal courts have repeatedly held that a prevailing § 1983 plaintiff is entitled to recover attorney's fees "unless special circumstances would render such an award unjust," and argue that no such circumstances exist here.
We find that competent, substantial evidence supports the trial court's factual findings, which in turn support its legal conclusions that section 723.033 is constitutional and that section 723.061(2) is unconstitutional.[5] We do not read section 723.033 as a traditional "rent control" statute, but as a legislative attempt to balance the interests of mobile home owners and park owners in the context of their unique economic relationship. We find that the "reasonableness" standard provided in the statute is adequate to guide trial judges in its implementation. Reading subsection 723.033(3) in pari materia with the other subsections of the statute, we find that it does not constitute a "conclusive presumption" and that it should be interpreted by trial judges as directory, rather than as mandatory and conclusive.
Having carefully considered the principles set out in Yee v. City of Escondido, California, Nollan v. California Coastal Commission, Hodel v. Irving, Seawall Associates v. City of New York, and the other cases cited by the parties, we find that section 723.061(2) constitutes an unconstitutional taking of property without compensation. We agree with the trial court that the statute goes far beyond the legitimate goal of reasonably accommodating *68 conflicting interests,[6] in effect coercing mobile home park owners to surrender indefinitely their rights to possess and occupy their land and to exclude others. Once the park owners have rented their property to mobile home owners, they are required by section 723.061(2) to continue doing so unless they buy all the mobile homes or pay to have them moved. A statute that requires any form of remuneration to recover the right to possess and occupy one's own property would seem to be confiscatory, but the evidence presented to the trial court demonstrated that neither the "buy out" option nor the "relocation" option is even economically feasible. Therefore, as a practical matter, the challenged statute authorizes a permanent physical occupation of the park owner's property and effectively extinguishes a fundamental attribute of ownership, the right to physically occupy one's land. Unlike section 723.033, the regulatory scheme contained in section 723.061(2) does not substantially advance a legitimate state interest, but instead singles out mobile home park owners to bear an unfair burden, and therefore constitutes an unconstitutional regulatory taking of their property. See Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), and cases cited therein.
Appellants have not demonstrated that they are entitled to attorney fees as a matter of law, either at the trial level or at the appellate level. We therefore do not find that the trial court abused its discretion in denying their motion for attorney fees below, nor that an award of appellate attorney fees is warranted.
The trial court's rulings are AFFIRMED. Appellants' motion for appellate attorney fees is DENIED.
WOLF and MICKLE, JJ., concur.
NOTES
[1] Since this litigation began, the Department of Business Regulation has been consolidated with the Department of Professional Regulation, but will be referred to in this opinion as "DBR".
[2] DBR acknowledges that the most significant difference between the two regulatory frameworks is the additional requirement of section 723.061(2).
[3] Yee v. City of Escondido, Cal., ___ U.S. ___, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (rent control ordinance was not an unconstitutional physical taking because mobile home park owners had voluntarily offered their property to tenants and could cease doing so upon providing notice, without having to compensate the tenants, but it could be a physical taking if such a statute were found "to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy"); Nollan v. California Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (requiring a lateral easement across beachfront property was not substantially related to the granting of a building permit); Hodel v. Irving, 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987) (federal law forbidding the devise of fractional interests in Indian lands interfered with a fundamental right of property ownership); Federal Communications Commission v. Florida Power Corp., 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987) ("The element of required acquiescence is at the heart of the concept of [physical] occupation"); Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) ("the `right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation"); and Seawall Associates v. City of New York, 74 N.Y.2d 92, 544 N.Y.S.2d 542, 542 N.E.2d 1059, cert. denied, City of New York v. Seawall Associates, 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 (1989) (ordinance intended to preserve "single room occupancy" housing effectively required owners to rent their properties indefinitely to strangers).
[4] DBR also asserts that section 723.005 specifically provides that the Division of Florida Land Sales, Condominiums, and Mobile Homes of the Department of Business Regulation does not have the power or duty to enforce the provisions of 723.033. But since the park owners did not prevail in their challenge of 723.033, this assertion is irrelevant.
[5] The impact of the holding in Glendale Federal Savings & Loan Association v. Department of Insurance, 485 So.2d 1321 (Fla. 1st DCA), rev. denied, Department of Insurance v. Glendale Federal Savings & Loan Association, 494 So.2d 1150 (Fla. 1986), is that factual determinations that are universally applicable to all persons affected by the statute may be necessary in a challenge to the facial validity of a statute, while the fact specific effect of a statute on one member of a class of affected persons may be reserved to the "as applied" challenge to constitutional validity.
[6] These conflicting interests appear to be protecting mobile home tenants from burdensome costs of dislocation while at the same time ensuring that mobile home park owners receive a fair return on their investment. We note that the parties may protect by contract their respective interests with regard to the duration and conditions of mobile home park tenancies.