740 So.2d 73 (1999)
MUNAO, MUNAO, MUNAO and MUNAO, d/b/a La Buona Vita Mobile Home Park, Appellants,
v.
The HOMEOWNERS ASSOCIATION OF LA BUONA VITA MOBILE HOME PARK, INC. and Charles Gaito, Appellees.
Nos. 97-2439, 97-4127.
District Court of Appeal of Florida, Fourth District.
July 14, 1999.
Rehearing Denied September 24, 1999.
*74 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and J. Allen Bobo of Lutz, Webb, Partridge & Bobo, Sarasota, for appellants.
Basil E. Dalack, West Palm Beach, and Clark, Kranz & Hernandez, Stuart, for appellees.
Carl R. Peterson, Jr. and David D. Eastman of Skelding, Labasky, Corry, Eastman, Hauser, Jolly & Metz, Tallahassee, for Amicus Curiae-Florida Manufactured Housing Association.
Robert S. Cohen of Robert S. Cohen, P.A., Tallahassee, for Amicus Curiae-Federation of Mobile Home Owners of Florida, Inc.
DELL, J.
These consolidated appeals are from a final judgment ordering a rent reduction for owners of mobile homes located in La Buona Vita Mobile Home Park and from a final judgment awarding the Homeowners Association of La Buona Vita Mobile Home Park, Inc. ("Homeowners Association") and individual parties[1] attorney's fees and costs.
*75 The Homeowners Association sued Natale Munao, II, and Natale Munao, III, the owners of La Buona Vita Mobile Home Park, claiming that the rent charged was unconscionable pursuant to section 723.033, Florida Statutes (1989), because appellants reduced the amenities provided to residents of the mobile home park. The Homeowners Association subsequently moved to amend the complaint to change unconscionable to unreasonable so that the complaint would comport with the amended statutory language of section 723.033, Florida Statutes (Supp.1990). The trial court granted the motion to amend.
After a non-jury trial, the court entered an order that, in relevant part, granted appellees' motion to amend the complaint to conform to the evidence presented at trial. The trial court also determined that the unreasonable condition of the mobile home park, rather than comparative rents, entitled appellees to a reduction in rent. On May 23, 1997, the trial court ordered the rents reduced for forty-eight months beginning on June 1, 1993, at the rate of ten dollars per month for each homeowner, which would be paid by reducing future rental payments by ten dollars a month. The court also provided that the ten dollar a month reduction in rent would continue until appellants made certain repairs to the property, including replanting foliage, repairing drainage basins, replacing the pool umbrellas, repainting clubhouse furniture, maintaining the clubhouse air conditioners so that the residents could operate the thermostats and repairing the shuffle-board courts. The court awarded the Homeowners Association attorney's fees and costs as the prevailing party.
On July 10, 1997, the trial court clarified the May 23, 1997 order by stating that the ten dollar reduction in rent would run from July 1997 through June 2001, and that the homeowners could withhold an additional ten dollars per month until appellants satisfied each of the conditions listed in the May 23, 1997 order.
On November 10, 1997, the trial court entered a final judgment awarding the Homeowners Association and Gaito attorney's fees and costs as prevailing parties pursuant to section 723.068, Florida Statutes. The court awarded the Homeowners Association $185,933.91 in attorneys fees, $29,363.90 in costs and $4,225.00 in expert attorney's fees, for a total of $219,522.21. The trial court also awarded the Homeowners Association/Guest Fee Plaintiffs $18,000.00 in attorney's fees and $308.50 in costs, for a total of $18,308.50, and awarded Charles Gaito $11,250.00 in attorney's fees and $815.30 in costs, for a total of $12,065.30. In determining the amount of fees awarded to the Homeowners Association and Homeowners Association/Guest Fee Plaintiffs, the trial court applied a contingency risk multiplier of 1.5.
Appellants contend that the trial court erred in allowing the Homeowners Association to amend its complaint to assert a claim for unreasonable rent because the 1990 amendment to section 723.033, Florida Statutes, was not in effect at the time the residents entered into their rental agreements. Appellants also contend that the trial court applied the wrong legal standard in determining the reasonableness of rents and abused its discretion in permitting amendment of the complaint to assert new claims. Finally, appellants contend that the trial court erred in awarding attorney's fees and costs to appellees and in applying a contingency risk multiplier to the attorney's fees awarded to the Homeowners Association and Homeowners Association/Guest Fee Plaintiffs. We affirm.
First, appellants do not dispute that section 723.033, Florida Statutes (1989), *76 prohibited unconscionable lot rental agreements, and that the 1990 version prohibited unreasonable lot rental agreements. Appellants contend, however, that the 1990 amendment to section 723.033 cannot be applied to this case because it was not in effect at the time the parties executed their lot rental agreements. They argue that the trial court's application of the 1990 amendment affected their substantive rights and impaired their obligations under the rental contracts by altering the unconscionable standard enunciated in prior versions of the statute.
[Chapter 723 was] created for the purpose of regulating the factors unique to the relationship between mobile home owners and mobile home park owners.... It recognizes that when such inequalities exist between mobile home owners and mobile home park owners as a result of such unique factors, regulation to protect those parties to the extent that they are affected by the inequalities, while preserving and protecting the rights of both parties, is required.
Fla. Stat. § 723.004(1).
The object of [chapter 83, the predecessor to chapter 723,] is to ameliorate and correct as far as possible by exercise of the police power what the Legislature has found to be evils inimical to the public welfare in the subject considered. Protection of mobile home owners from grievous abuses by their landlords, or mobile home park owners, was found by the Legislature to be essential.
Stewart v. Green, 300 So.2d 889, 891 (Fla. 1974). See Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (Fla. 1974); Aspen-Tarpon Springs Ltd. Partnership v. Stuart, 635 So.2d 61, 67 (Fla. 1st DCA 1994).
In Strong, the Florida Supreme Court harmonized the right to contract and use property with the police power of the state to establish regulations:
The authority of the state through the Legislature to impose reasonable regulations upon mobile homes and mobile home parks is unquestionable under its broad police power in view of the fact that this enterprise peculiarly affects the public interest and bears a substantial relation to the public health, safety, morals, and general welfare.
Strong, 300 So.2d at 884. See Stewart, 300 So.2d at 891; Fla. Stat. § 723.004(1).
Neither the contract clause nor the due process clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; ... all contract and property rights are held subject to [the state's] fair exercise [of the police power].
Strong, 300 So.2d at 885 (quoting Atlantic Coastline R.R. Co. v. City of Goldsboro, North Carolina, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914)).
The application of the 1990 version of section 723.033 does not result in impairment of the rental contracts. The power to regulate the terms and performance under lot rental contracts is reserved to the legislature under its police power. Such regulations may be changed from time to time to safeguard the vital interests of the people. Here, the change in the standard for evaluating the amount of rent charged does not constitute an impairment of contract. The contract clause must be construed in harmony with the state's reserved power to safeguard the vital interests of the people. See Strong, 300 So.2d at 886-87.
Second, appellants argue that in order for the lot rental agreements to be unreasonable under the 1990 version of section 723.033, Florida Statutes, the trial court had to determine that the rental amount being paid by the mobile home owners was in excess of market rent charged by comparable facilities. In conjunction with this issue, the Florida Manufactured Housing Association (the Association) appeared as amicus curiae on the *77 side of the mobile home park owner. The Association argues that the trial court's failure to use the market rent standard provided for in section 723.033, Florida Statutes, results in a standard that is unconstitutionally vague. In support of this argument, the Association cites Department of Business Regulation v. National Manufactured Housing Fed'n., Inc., 370 So.2d 1132 (Fla.1979) and Aspen-Tarpon Springs Ltd. Partnership v. Stuart, 635 So.2d 61 (Fla. 1st DCA 1994).
In National Manufactured Housing, the Florida Supreme Court addressed the constitutionality of section 83.784(1)(a), Florida Statutes (1977), which provided that the State Mobile Home Tenant Landlord Commission was "to determine whether or not the rental or service charge increase or a decrease in services is so great as to be unconscionable or not justified under the facts and circumstances of the particular situation." The court held that section 83.784(1)(a) was "constitutionally defective because [that section] charge[s] the commission with the fundamental legislative task of striking this balance between mobile home park owner and mobile home park tenant, without any meaningful guidance." Id. at 1135. The court concluded that because "[t]he term[] unconscionable or not justified under the circumstances ... [was] not accompanied by any standards or guidelines to aid a court or administrative agency in ascertaining the true legislative intent underlying the act," the section was unconstitutionally vague. Id., The statute considered in National Manufactured Housing differs significantly from section 723.033, Florida Statutes (Supp.1990).
Section 723.033 provides:
(2) When it is claimed or appears to the court that a lot rental amount, rent increase, or change, or any provision thereof, may be unreasonable, the parties shall be afforded a reasonable opportunity to present evidence as to its meaning and purpose, the relationship of the parties, and other relevant factors to aid the court in making the determination.
(3) For the purposes of this section, a lot rental amount that is in excess of market rent shall be considered unreasonable.
(4) Market rent means that rent which would result from market forces absent an unequal bargaining position between mobile home park owners and mobile home owners.
(5) In determining market rent, the court may consider rents charged by comparable mobile home parks in its competitive area. To be comparable, a mobile home park must offer similar facilities, services, amenities, and management.
(6) In determining whether a rent increase or resulting lot rental amount is unreasonable, the court may consider economic or other factors, including, but not limited to, increases or decreases in the consumer price index, published by the Bureau of Labor Statistics of the Department of Labor; increases or decreases in operating costs or taxes; and prior disclosures.
Fla. Stat. § 723.033(2)-(6) (Supp.1990). The First District Court of Appeal considered whether section 723.033 was unconstitutionally vague in Aspen-Tarpon Springs. There, the trial court ruled that section 723.033 was constitutional, and concluded that section 723.033 "contains sufficient standards to guide trial courts in the exercise of their duties under that statute." Id. at 63. In making this determination, the trial court:
[o]bserv[ed] that it was "obliged to construe the statute in a manner so as to avoid a constitutional defect, if a reasonable construction may be given it in order to achieve that result," the [trial] court read sections 723.033(3)-(5) in pari materia with section 723.033(6) and rejected the park owners'"conclusive presumption" argument. It found that the statute "allows the park owner to show, *78 by evidence pertaining to matters referenced in subsection (6)," that a rent "in excess of market rent" is not unreasonable. It ruled that "shall" in subsection (3) "should reasonably be interpreted by a trial court as directory, rather than as mandatory and conclusive."
Aspen-Tarpon Springs, 635 So.2d at 63. The First District affirmed the trial court's conclusions and held,
... that the "reasonableness" standard provided in the statute is adequate to guide trial judges in its implementation. Reading subsection 723.033(3) in pari materia with the other subsections of the statute, we find that it does not constitute a "conclusive presumption" and that it should be interpreted by trial judges as directory, rather than as mandatory and conclusive.
Id. at 67.
We agree with the holding in Aspen-Tarpon Springs. Market rent is a factor to be considered in conjunction with the additional elements set forth in sections 723.033(2) and (6). Either party may offer evidence to support or challenge the reasonableness of the rent. "[O]ther factors" may include the condition of the amenities in the mobile home park or other relevant criteria that may impact on the reasonableness of the rent charged. Applying that analysis to the facts in this case, even though the rent charged was below market rent, when considered in light of the condition of the amenities, the trial court properly concluded that the rent was unreasonable.
Next, appellants argue that the trial court erred in granting the Homeowners Association's motion to amend the pleadings to conform to the evidence presented at trial. The motion to amend sought to include allegations regarding the drainage boxes, pool umbrellas and clubhouse furniture. In the absence of an abuse of discretion, a trial court's ruling on a motion to amend the pleadings will not be disturbed on appeal. See Life Gen. Sec. Ins. Co. v. Horal, 667 So.2d 967, 969 (Fla. 4th DCA 1996). Once a trial has commenced, the right to amend is controlled by Florida Rule of Civil Procedure 1.190(b), which provides that if evidence is objected to on grounds that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform to the evidence and shall freely allow amendment when the merits of the cause are more effectually presented thereby. Here, the trial court did not abuse its discretion in allowing the amendment because the evidence presented with respect to the drainage boxes, pool umbrellas and clubhouse furniture related to claims expressly made in the second amended complaint.
Finally, appellants contend that the order awarding attorney's fees to appellees should be reversed because the Homeowners Association, Homeowners Association/Guest Fee Plaintiffs and Gaito were not the prevailing parties on the significant issues in this case. Appellants also contend that the trial court erred in the amount of fees awarded and the application of a contingency risk multiplier to the fees awarded to the Homeowners Association and Homeowners Association/Guest Fee Plaintiffs.
Section 723.068, Florida Statutes, provides that "in any proceeding between private parties to enforce provisions of this chapter, the prevailing party is entitled to a reasonable attorney's fee." The test for determining the prevailing party was set forth in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and adopted in Florida by Moritz v. Hoyt Enters., Inc., 604 So.2d 807 (Fla.1992). "In Hensley, the United States Supreme Court held that the test is whether the party `succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Moritz, 604 So.2d at 809-10 (quoting Hensley, 461 U.S. at 433, 103 S.Ct. 1933).
*79 The claims asserted in the second amended complaint deal with the reasonableness of rent under chapter 723. The entitlement to a reduction in rent and restoration of the amenities were the significant issues in this case. The Homeowners Association prevailed on these issues. See Moritz, 604 So.2d at 810. Further, the numerous defects alleged in the complaint were related, rather than separate and distinct causes of action. The fact that the trial court did not base its award on all of the alleged defects does not alter the reality that appellees prevailed on the significant issues.
The trial court properly applied a contingency risk multiplier in determining the amount of the Homeowners Association's and Homeowners Association/Guest Fee Plaintiffs attorneys' fees. In Lane v. Head, 566 So.2d 508 (Fla.1990), the court held that the use of a multiplier is within the trial court's discretion in instances where an attorney's fee agreement is partial, and that "[a]ttorneys should be encouraged to take cases on a partial contingency-fee arrangement, since this policy also will encourage attorneys to provide services to persons who otherwise could not afford the customary legal fee." Id. at 511. The Lane court concluded that "when a fee arrangement is partially contingent, the court still has discretion to apply the appropriate multipliers mandated... by ... [Standard Guar. Ins. Co. v.] Quanstrom [555 So.2d 828 (Fla.1990)]." Id. at 511. Quanstrom enumerates twelve factors which a trial court should consider in determining a reasonable attorney's fee. Quanstrom, 555 So.2d at 833-34. See also Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 1999 WL 330083 (Fla.1999).
Here, the trial court based its conclusion that this was a proper case for the application of a contingency risk multiplier with respect to the Homeowners Association and the Homeowners Association/Guest Fee Plaintiffs on several factors. With respect to the Homeowners Association/Guest Fee Plaintiffs, the court stated:
a) The contracts between the county court plaintiffs, Vanderneut [sic], Miller, Mercier and Greenwood and Guy Bennett Rubin, Esquire, and the Rubin & Rubin firm are contingency fee contracts.
b) The contract between the plaintiff homeowners' association and Guy Bennett Rubin, Esquire, and the Rubin & Rubin firm is a contingency fee contact [sic].
c) The questions involved in this case were complex. Further, the case involved a class action including numerous clients and opposing fact witnesses. Finally, the case was aggressively litigated on both sides and agreement on any issue of fact or law was seldom reached between the parties.
d) The case had at best an even chance of success at the outset.
e) The results obtained by plaintiffs' counsel were outstanding, particularly in light of the difficulty of the case from beginning to end and the unequal resources of the parties.
f) There was no possibility of payment of the legal bills rendered from plaintiffs' counsel to the plaintiffs.
g) The hours that plaintiffs' counsel was required to expend with regard to this case undoubtedly cut into other activities of plaintiffs' counsel and most assuredly forced plaintiffs' counsel to forego working on other legal matters.
h) Counsel for plaintiffs established a relationship with the plaintiffs and its members over the course of almost two (2) years in the course of handling the subject litigation.
In addition to the reasons enumerated for the Homeowners Association/Guest Fee Plaintiffs, the trial court provided supplementary reasons for application of the multiplier with respect to the Homeowners *80 Association's fees: the questions involved in the case were extremely complex, the case was one of first impression, the case had less than an even chance of success at the outset and counsel developed a relationship with the plaintiffs over the course of four years. The trial court also stated that it applied the multiplier based on the expert witness testimony, the factors set forth in Florida Rules of Professional Conduct 4-1.5, section 57.104, Florida Statutes (1995), and the relevant Florida case law. We hold that the record supports the trial court's express findings and satisfies the requirements of Quanstrom.
We also hold that the trial court properly awarded attorney's fees for Gaito. See Fla. R. Civ. P. 1.180(a); Fla. Stat. § 723.068.
Accordingly, we affirm the final judgments that are the subject of these consolidated appeals in all respects.
AFFIRMED.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] Charles Gaito, the former president of the Homeowners Association, was joined as a third-party defendant in this lawsuit. Arthur Greenwood, Dale and Freda Miller, Roy and Adeline Mercier and Patricia Vandernut ("Homeowners Association/Guest Fee Plaintiffs") are individual residents who opted out of the class and filed actions against La Buona Vita Mobile Home Park in county court for retaliatory, unlawful and discriminatory actions. The Homeowners Association/Guest Fee Plaintiffs' actions were consolidated into the class action pursuant to a stipulated order.